## The Pittsburgh, Fort Wayne and Chicago Railway Company *versus* Hinds.

1. It is not more the duty of railroad companies to transport their passengers safely, than it is of the passengers to behave in a quiet and orderly manner.

2. There is no such privity between a railroad company and a passenger as to make them liable for that passenger's injury to another, upon the principle of *respondeat superior*.

3. A train having stopped at a regular station, a riotous crowd rushed upon the cars in such numbers as to defy the power of the conductor to resist. They commenced a fight in the cars, in which the plaintiff was injured. *Held*, that the fact that the conductor knew that the crowd were improper persons was immaterial.

4. It would be improper for the conductor *voluntarily* to admit such persons upon the train.

5. It is the duty of railroad companies to provide men enough for the ordinary demands of transportation, but not to provide a police force adequate for such emergencies.

6. Passengers take the risks of injury from mobs by the way, and cannot throw them upon the transporter.

7. Allowing undue numbers to enter a car is a great wrong, and in proper cases would be punished.

8. A conductor of a train has large powers at his disposal to preserve order in the car and expel disturbers of the peace. His official character is a power. He may stop the train, call to his assistance the fireman and all the brakesmen and such passengers as are willing to help. Until he puts forth these forces he has no right to abandon the conflict.

9. A conductor falls far short of his duty when he keeps his train in motion, or is busy in collecting fare in one car whilst a general fight is raging in another.

[Pittsburgh, Fort Wayne and Chicago Railway Co. *v.* Hinds.]

10. Calling on the passengers to throw the fighters out is not enough, he should lead the way, stop the train, and expel the rioters, or demonstrate by an earnest experiment that it was impossible.

ERROR to the Court of Common Pleas of *Allegheny county.*

This action was brought, December 5th 1865, by Parker Hinds and Martha Jane his wife, against The Pittsburgh, Fort Wayne and Chicago Railway Company, for injury to her whilst riding on the defendants' train.

The declaration contained two counts, both averring, in forms slightly variant, negligence on the part of the defendants, and their officers in charge of the train, resulting in the dislocation of the plaintiff's arm; but not setting out the manner in which it was done.

The injury occurred under the following circumstances:—An agricultural fair was in progress near the town of Beaver, about the middle of October 1865. On one of the days of the fair, Mrs. Hinds was a passenger on the defendants' train, in the ladies' car, which was the hindmost in the train. As the train approached the Beaver station, a large crowd of boisterous drunken men and women were seen approaching the station, and as soon as the train stopped noisy and disorderly drunken men forced themselves into the ladies' car: the evidence made it pretty clear that it was impracticable for the conductor to keep them off the train. One of the intruders, who was amongst the most boisterous, and was uttering loud threats against some one, jumped on the rear platform as the car started. Soon after the car moved off, a fight was commenced in this car by this last intruder. In the course of the fight some one was thrown upon Mrs. Hinds with such violence that her arm was greatly injured, and she laid by from her ordinary duties. The evidence was conflicting as to the efforts made by the conductor to quell the fight—some of the witnesses testifying that he could have got amongst the combatants; others, that the crowd was so dense that he could not enter the car at all, and could do no more than stand at the door and call out for peace, and tell the passengers to throw the rioters from the car. The car was stopped two or three times between Beaver and the next station; but at each time went on after two or three minutes or less, without anything special being done to stop the fight or eject the rioters: all, or most of them, got out at the next station.

On the trial, the plaintiff offered evidence to show "when, where and how the plaintiff was injured." The defendant objected "to evidence being received under the pleadings, except such as tends to establish an injury to the plaintiff, resulting from some accident to the train."

The objection was overruled, and an exception taken. There were also points submitted by the plaintiff which the opinion of the Supreme Court makes it unnecessary to specify.

3 P. F. SMITH—33

[Pittsburgh, Fort Wayne and Chicago Railway Co. *v.* Hinds.]

The court (Stowe, A. J.) said to the jury, that the plaintiff claimed to recover:—

"1. Because the evidence shows that the conductor did not do his duty at Beaver station, by allowing improper persons to get upon the cars.

"2. Because he allowed more persons than was proper under the circumstances to get on the train, and to remain upon it.

"3. That he did not do what he could and ought to have done to put a stop to the fighting upon the train, which resulted in plaintiff's injury."

After discussing the law as to the first two propositions, and submitting them as questions of fact, he said, as to the third:—

"The evidence shows that there was a fight going on in the cars, that the conductor was notified, and that he did not interfere to prevent it. We instruct you as a principle of law, that the conductor of a train is bound to attempt to put a stop to a fight in the cars, if he can do so without apparently involving great personal danger to himself; and if no attempt is made, and no sufficient excuse be shown for not making an effort to do so, and in the melee passengers not participating, but quietly occupying their seats, are injured, the railway company employing such conductor is liable in damages.

"In such case, the law casts the burden of proof upon the defendant, to prove that an effort commensurate with the contingency was made, or to show such facts as will induce a jury to believe that it would have been fruitless, or accompanied with actual or apparent great personal danger.

"Has, then, the conductor shown you such facts as, in your opinion, excuse him from entering the car, and using his authority to stop the fight, under the circumstances as established by the testimony?

"If he could not get into the car by reason of the crowd, *he has.* If the facts satisfy you that he could have got in by any reasonable possibility, it was his duty to go, and to use every proper means to stop the affray; and to say that he might have failed to stop it will not do in such cases, because he was bound to make the attempt. The law does not hold him to perform impossibilities, but it does hold him to a strict performance of his duty, or to show a reasonable excuse for its non-performance.

"If all is done that reasonable men would say was proper and right under the circumstances, that is all that is required, but less will not suffice."

There was a verdict for the plaintiff for $2250.

The errors assigned were, the admission of the evidence, and the charge of the court in submitting the case to the jury, as stated in the three propositions.

[Pittsburgh, Fort Wayne and Chicago Railway Co. v. Hinds.]

*J. H. Hampton,* for plaintiff in error, cited 1 Chitty's Pl. 232; Stephen's Pl. 378–405; 1 M. & M. 218; 1 M. & S. 441; Com. Dig., *Pleader,* ch. 17; Co. Lit. 303; 2 B. & P. 267; Rex *v.* Horne, Cowp. 672; Andrews *v.* Whitehead, 13 East 107; Mayor *v.* Humphries, 1 C. & P. 251; McKinney *v.* Niel, 1 McLean 540; Pennsylvania Railroad *v.* Kilgore, 8 Casey 292; Same *v.* Zebe, 9 Id. 319; Same *v.* Vandever, 12 Id. 298; Burnet *v.* Dutton, 10 N. Hamp. 481; Hawkins *v.* Hoffman, 6 Hill 586; McKinney *v.* Niel, 1 McLean 540; Angell on Carriers, § 570.

*T. M. Marshall,* for defendant in error, cited Sullivan *v.* Reading Railroad, 6 Casey 234; Kennard *v.* N. J. Railroad Co., 9 Harris 206; Vinton *v.* Railroad, 11 Allen 304; U. S. *v.* Holmes, 1 Wall. Jr., 23.

The opinion of the court was delivered, May 13th 1867, by

WOODWARD, C. J.—The action is for an injury sustained by the plaintiff's wife whilst she was a passenger in the cars of the defendants; and what is peculiar in the case is the fact that the injury was not occasioned by defective machinery, or cars or road, or by anything that pertained properly to their business as transporters, but was caused by the fighting of passengers among themselves. Drunken and quarrelsome men intruded into the ladies' car in great numbers whilst the train stopped at Beaver station, and in the disgraceful fight which ensued among them, the plaintiff's arm was broken, and for this the railroad company is sued. Had the suit been against the riotous men who did the mischief, the right of recovery would have been undoubted, for it is not more the duty of railroad companies to transport their passengers safely than it is the duty of passengers to behave in a quiet and orderly manner. This is a duty which passengers owe both to the company and to fellow-passengers, and when one is injured by neglect of this duty the wrongdoer should respond in damages. But in such a case is the company liable?

There is no such privity between the company and the disorderly passenger as to make them liable on the principle of *respondeat superior.* The only ground on which they can be charged is a violation of the contract they made with the injured party. They undertook to carry the plaintiff safely, and so negligently performed this contract that she was injured. This is the ground of her action—it can rest upon no other. The negligence of the company, or of their officers in charge of the train, is the gist of the action, and so it is laid in the declaration. And this question of negligence was submitted to the jury in a manner of which the company have no reason to complain. The only question for us as a court of error, therefore, is whether the case was, upon the whole, one that ought to have been submitted. The

[Pittsburgh, Fort Wayne and Chicago Railway Co. *v.* Hinds.]

*manner* of the submission having been unexceptionable, was there error in the *fact* of submission ?

The learned judge reduced the case to three propositions. He said the plaintiff claims to recover—

1st. Because the evidence shows that the conductor did not do his duty at Beaver Station, by allowing improper persons to get on the cars.

2d. Because he allowed more persons than was proper under the circumstances to get on the train, and to remain upon it.

3d. That he did not do what he could and ought to have done to put a stop to the fighting upon the train, which resulted in the plaintiff's injury.

As to the first of the above propositions the judge referred the evidence to the jury, especially with a view to the question whether the disorderly character of the men at Beaver station had fallen under the conductor's observation so as to induce a reasonable man to apprehend danger to the safety of the passengers.

The evidence on this point was conflicting, but it must be assumed that the verdict has established the conclusion that the conductor knew that drunken men were getting into the cars. Let it be granted also as a conclusion of law that a conductor is culpably negligent who admits drunken and quarrelsome men into a passenger car. What then ?

The case shows that an agricultural fair was in progress in the vicinity of Beaver station—that an excited crowd assembled at the station rushed upon the cars in such numbers as to defy the resisting power at the disposal of the conductor, and that the man who commenced the fight sprung upon the platform of the hindmost car after they were in motion.

Of what consequence, then, was the fact that the conductor knew these were improper passengers ? It is not the case of a voluntary reception of such passengers. If it were, there would be great force in the point, for more improper conduct could scarcely be imagined in the conductor of a train than voluntarily to receive and introduce among quiet passengers, and particularly ladies, a mob of drunken rowdies. But the case is that of a mob rushing with such violence and in such numbers upon the cars as to overwhelm the conductor as well as the passengers.

It is not the duty of railroad companies to furnish their trains with a police force adequate to such emergencies. They are bound to furnish men enough for the ordinary demands of transportation, but they are not bound to anticipate or provide for such an unusual occurrence as that under consideration.

When passengers purchase their tickets and take their seats they know that the train is furnished with the proper hands for the conduct of the train, but not with a police force sufficient to quell mobs by the wayside. No such element enters into the

[Pittsburgh, Fort Wayne and Chicago Railway Co. v. Hinds.]

implied contract.   It is one of the incidental risks which all who travel must take upon themselves, and it is not reasonable that a passenger should throw it upon the transporter.

These observations are equally applicable to the second proposition.   The conductor did not "allow" improper numbers, no more than improper characters, to get upon the cars.   He says he took no fare from them, and in no manner recognised them as passengers.   To allow undue numbers to enter a car is a great wrong, almost as great as knowingly to introduce persons of improper character, and in a suitable case we would not hesitate to chastise the practice severely.   But this is not a case in which the conductor had any volition whatever in respect either of numbers or characters.   He was simply overmastered, and the only ground upon which the plaintiff could charge negligence upon the company would be in not furnishing the conductor with a counter force sufficient to repel the intruders.   This was not the ground assumed by the plaintiff, and it would scarcely have been maintainable had it been assumed.

Taking the case as it is presented in the evidence, we think it was error for the court to submit the cause to the jury on these two grounds.   But upon the third ground we think the cause was properly submitted.

If the conductor did not do all he could to stop the fighting, there was negligence.   Whilst a conductor is not provided with a force sufficient. to resist such a raid as was made upon the train in this instance, he has, nevertheless, large powers at his disposal, and if properly used, they are generally sufficient to preserve order within the cars, and to expel disturbers of the peace.   His official character and position are a power.   Then he may stop the train and call to his assistance the engineer, the fireman, all the brakesmen, and such passengers as are willing to lend a helping hand, and it must be a very formidable mob indeed, more formidable than we have reason to believe had obtruded into these cars, that can resist such a force.   Until at least he has put forth the forces at his disposal, no conductor has a right to abandon the scene of conflict.   To keep his train in motion and busy himself with collecting fares in forward cars whilst a general fight was raging in the rearmost car, where the lady passengers had been placed, was to fall far short of his duty.   Nor did his exhortation to the passengers to throw the fighters out come up to the demands of the hour.   He should have led the way, and no doubt passengers and hands would have followed his lead.   He should have stopped the train, and hewed a passage through the intrusive mass until he had expelled the rioters, or have demonstrated, by an earnest experiment, that the undertaking was impossible.

Such are the impressions which this novel case has made upon.

[Pittsburgh, Fort Wayne and Chicago Railway Co. *v.* Hinds.]

our minds.   We think there was error in submitting the case upon the first two propositions, but none in submitting it on the third, and if the record showed that the jury decided it upon this latter ground the judgment could be affirmed. · But, inasmuch as the error we find upon the record may have infected the verdict, the judgment must be reversed, and a *venire facias de novo* awarded.