201        237
32 SC ¹626
32 SC ¹627

# Muhlhause *v.* Monongahela Street Railway Company, Appellant (No. 1).

*Negligence—Street railways—Park station—Management of crowd.*

When a street car company invites the public to use its line to visit a park, or other public place of amusement or recreation and thereby induces large crowds of people to assemble at its stations in such place, the corporation must use reasonable care in handling the people and in protecting them from injuries arising from the conduct of the crowd in entering and leaving its cars.

What means shall be employed to insure the safety of persons on such occasions must be left to the corporation, subject however, when the question is raised, to the approval or disapproval of the proper legal tribunal.

In an action against a street railway company to recover damages for personal injuries, it appeared that plaintiff, a boy, visited a park into which defendant had extended its tracks. On the evening of the accident over 3,000 persons were in the park. The defendant maintained a proper platform and enclosure for receiving departing passengers, but permitted the platform to become unduly crowded. When the plaintiff was on the platform waiting for a car a crowd of from 150 to 200 persons had gathered there, and were all waiting for a single car to carry them to their destination. The car was a summer car with a running board on the side, with seating and standing capacity of about ninety persons. There was no person to control or direct the movements of the crowd, nor was there a guard at the gate of the enclosure. The car in question entered the enclosure at an unusual rate of speed, and the people hanging on the running board struck plaintiff's sister, who fell against her brother, and knocked him under the car wheel, severely injuring him. *Held,* that the case was for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued Oct. 31, 1901.    Appeal, No. 77, Oct. T., 1901, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1900, No. 441, on judgment for plaintiff in case of Adam Muhlhause and Adam C. Muhlhause, by his father and next friend, Adam Muhlhause, v. The Monongahela Street Railway Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Trepass to recover damages for personal injuries. Before Collier, J.

The facts are fully stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,250.   Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*J. H. Beal*, with him *Knox & Reed*, for appellant.—The company had planned and arranged its property with great care, and after a thorough investigation.   It had made it as safe as it could possibly be made.   The injury resulted not from anything it had done, but simply because of the rudeness and negligence of certain persons in attempting to get on the car before it oame to a stop.   It was accordingly not liable for the injury to the plaintiff.

We call attention of the court especially to the following cases : Ellinger v. Wilmington, etc., Railroad Co., 153 Pa. 213 ; Pittsburg, etc., Ry. Co. v. Hinds, 53 Pa. 512 ; Randall v. Frankford, etc., City Passenger R. R. Co., 139 Pa. 464.

*George H. Stengel*, for appellee.—The defendant did not use due care : Pittsburg, etc., R. R. Co. v. Pillow, 76 Pa. 510 ; Hogan v. South-Eastern Ry. Co., 28 L. T. Rep. 271 ; Treat v. Boston, etc., R. R. Corporation, 131 Mass. 371 ; Taylor v. Penna. Co., 50 Fed. Repr. 755 ; Thatcher v. Central Traction Co., 166 Pa. 66.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1902:

Adam C. Muhlhause, the plaintiff, a boy of fourteen years of age, accompanied by his sister and her husband, boarded a car of the defendant corporation at Smithfield street and Fifth avenue, in Pittsburg, about eight o'clock on Sunday evening September 9, 1900, with the intention of making a continuous trip to Kennywood Park and return.   This park is a pleasure resort and about eleven miles from the heart of the city.   On the day of this occurrence a concert was to take place at the park and it had been extensively advertised by the defendant corporation.   A large crowd of people visited the park during the day and evening.   The street railway runs from the city to and through the park where it has double tracks enclosed by a fence.   There was in the park one place for unloading

passengers and another place for receiving and loading them. The places were used as stations and were enclosed by fences, with gates as means of ingress and egress. The enclosure for receiving departing passengers was from 100 to 130 feet in length, and extended back from the track about thirty-five feet. The cars entered the enclosure through a gate across the track, which was opened and closed, as the passage of the cars required. The plaintiff and his companions did not desire to alight at the park, but intended to remain in the car, and passing around the loop, to return to the city in the same car. On their arrival, however, the conductor informed them that the rules of the corporation required them to leave the car, which they did, and walking through the park to the station for departing passengers, they entered it for the purpose of taking a car to return to the city. A large crowd of people were in the enclosure, intending to board the cars on their return journey. The cars entered and left the enclosure about every two and one half minutes. After the arrival of the plaintiff and his friends at the station, the first car which came into the place was too much crowded for them to get aboard, and the second car would not take them to their destination. The third car came through the gate and entered the enclosure, according to the plaintiff's witnesses, at a rapid rate of speed. At this time the boy was standing between his sister and her husband, about three feet from the track and about the length of a car from the gate where the car entered. As soon as it entered the gate the crowd rushed for it and, according to one of the witnesses, " they were climbing all over it and jumping on and knocking people down and everything else." As the car proceeded in the enclosure, the people hanging on it and projecting from the running board struck Mrs. Stevens, the boy's sister, who fell against her brother and knocked him under the car wheel, by which his left foot was so badly crushed as to require amputation.

This action was brought to recover damages for the injuries sustained by the boy. At the close of the plaintiff's testimony the court refused the defendant's motion for a compulsory nonsuit. Subsequently at the conclusion of the defendant's evidence, the court denied a prayer for instruction that under the pleadings and evidence the verdict should be for the de-

fendant.   This is the only assignment of error.   The plaintiff claims that his injuries were caused by the negligence of the defendant " in the management and control of its passenger station, and in causing and permitting the same to be over-crowded in the operation and management of its car, and in permitting and causing the running board thereof to be over-crowded, and in the operation and running of its car by reck-lessly and negligently running such over-crowded car into and through such over-crowded station at an improper and ex-cessive rate of speed."

The defendant denies these allegations of negligence and asserts that it had made its station as safe as it could possibly be made, and that " the injury resulted not from anything it had done, but simply because of the rudeness and negligence of certain persons in attempting to get on the car before it came to a stop."

In determining the liability of the defendant in this case we need not consider whether or not the plaintiff stood to the car-rier in the relation of a passenger, requiring from it the exercise of the degree of care which that relation exacts.   The case was not tried in the court below upon that theory.   The learned trial judge held the defendant corporation only to the exercise of ordinary care under the circumstances.   This was the stand-ard by which the acts and conduct of the defendant on the oc-casion of the accident were to be judged, and its responsibility for the plaintiff's injuries could only arise on the finding of the jury that it had failed in the performance of that duty.

The single assignment of error raises the question whether there was sufficient evidence to submit to the jury to justify a verdict that the defendant had not exercised ordinary care in view of the dangers to be apprehended on this occasion.   A carrier must furnish a safe and sufficient means of ingress to, and egress from, its trains.   It is likewise incumbent upon it to exercise ordinary care in protecting from danger persons as-sembled at its stations, intending to depart by its trains.   Rude-ness and bad manners of strangers and intending passengers, resulting in injuries, will not convict a carrier of negligence. Such conduct is not to be anticipated, and the carrier is not re-quired to provide against it.   But when a street car company invites the public to use its line to visit a park, or other public

place of amusement or recreation, and thereby induces large crowds of people to assemble at its stations in such place, the corporation must use reasonable care in handling the people and in protecting them from injuries arising from the conduct of the crowd in entering and leaving its cars : 1 Fetter on Carriers of Passengers, section 102. That many people will collect at the stations on such occasions, the corporation must anticipate, and it is obligatory on it to see that its station accommodations and means for assuring the safety of its intending passengers are commensurate to the crowd which is likely to assemble. It is the experience of every one, and especially of those who operate street cars, that large bodies of people awaiting transportation rush on the car to secure seats immediately on its arrival at the station, regardless of consequences to individuals ; and this is true of all classes of people. This fact the corporation is presumed to know and to use proper care in controlling the crowd and guarding against the dangers arising from its probable conduct. What means shall be employed to insure the safety of persons on such occasions must be left to the corporation subject, however, when the question is raised, to the approval or disapproval of the proper legal tribunal.

In the case in hand the learned trial judge instructed the jury that " the place (station for departing passengers) was good enough. It is not pretended that the place was defective because it was not defective, for the evidence is that it was a proper arrangement. But the point is whether, with that arrangement, there was proper care." Kennywood Park is much frequented by the people of Pittsburg. In the summer, many concerts are held there which are extensively advertised by the defendant corporation, whose street car lines furnish the means of transportation to and from it. Large crowds are attracted to the park by the advertisements and inducements held out by the defendant, whose cars and stations are crowded on such occasions. These conditions had prevailed during the summer preceding the Sunday in September, 1900, when Adam C. Muhlhause was injured. On the day of the accident from 6,000 to 8,000 people visited the park, and about 3,000 people were there during the evening of the day. This crowd was not in excess of the numbers frequenting the park on similiar occasions. It was, therefore, clearly the duty of the defendant to anticipate

the size of the crowd that would assemble at the station on the evening of the accident, and to make suitable arrangements for its control and management. The park was opened in 1898, and since then the defendant corporation has been accustomed to carry these large crowds to and from it. Hence the number of people at the station on this occasion did not surprise the corporation and was not beyond what it should have foreseen.

The defendant contends that the arrangements for taking care of arriving and departing passengers had been carefully planned by an experienced engineer, and " that everything had been done that could be devised to provide for the safety of the passengers." It is conceded, and the court so instructed the jury, that the place used as a station was safe. It is not claimed that the negligence of the defendant was the maintenance of an unsafe platform or station. Nor that the crowd in the rear of the boy pushed him against the moving car. But the allegation of the plaintiff is that the defendant permitted its station and the running board of the car entering it to be overcrowded, and ran the car recklessly and negligently into the enclosure at an improper and excessive rate of speed. It is averred that this action on the part of the defendant was the cause of the plaintiff's injuries. In considering the only error assigned in this case we must assume the testimony of the plaintiff to be true. It shows that at the time of the accident there were 150 to 200 people at the station, ready and anxious to board the first departing car, and that but a single car entered at this time to carry them to their destination. It was an open summer car, having a running-board on the side, and with a seating capacity of forty-five, and with a seating and standing capacity of about double that number. There was no person in charge of the gateway used as an entrance to the station, nor was there any officer or person at the station to control or direct the movements of the crowd. The plaintiff's witnesses testified to this, and under the instructions of the court the jury must have so found. It must also be assumed as a fact that the car entered and passed into the enclosure at an excessive rate of speed, much beyond what the safety of the people awaiting it permitted.

These facts necessarily carried the case to the jury on the question of the defendant's negligence. The fence surround-

ing the enclosure used as a station in no way afforded a protection to the people there. The corporation could have protected those persons by placing a gateman at the entrance who would admit no one until after the arrival of the car, and then only a sufficient number of persons to fill it. But instead of taking this precaution no one was in charge of the gateway and all who came entered at their pleasure. The object in having the approach to the cars enclosed by a fence with a gateway for an entrance was evidently to control large crowds and protect passengers in entering the cars. It is no sufficient reason for not using the gate for this purpose that, as suggested by defendant, it would be difficult to keep the crowd outside, and that there would be serious danger of injury to women and children in doing so. This, however, would not probably nor necessarily be the result of preventing the crowd from entering the station. But if it were, the injuries resulting from such action on the part of the railway could not be attributed to the negligence of the defendant corporation. It is quite apparent that the plaintiff would not have been injured by an overcrowded car had there been admitted to the station only the number required to fill the car. To permit, however, 150 or 200 persons anxious to return home to go into the enclosure used as a station for entering a car with a seating capacity of forty-five people, at nine o'clock at night, was an invitation to the intending passengers to create a state of affairs that would necessarily result in danger.

But aside from this means of protecting those at the station, the corporation could have controlled the crowd and prevented disorder by having a sufficient number of officers present at the station to direct the movements of the people. It was not a lawless crowd, nor was it beyond the control of a reasonable number of efficient servants or officers. The learned judge practically told the jury that one officer would have been sufficient to prevent the crowd from jumping on the car. Had the crowd been kept off the car until it stopped the plaintiff would not have been injured. The failure to control the crowd in this respect, aided by the rapid speed at which the car was propelled at the station, caused the boy to be thrown under, and crushed by, the wheels of the vehicle. The accident could have been avoided by the exercise of reasonable care on the

part of the defendant corporation, and it is therefore responsible to the plaintiff for the injuries he sustained.

The assignment of error is overruled and the judgment is affirmed.