# Kennedy *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroad—Station—Passenger—Disorderly conduct.*

In an action by a woman against a railroad company to recover damages for personal injuries, a verdict and judgment for the plaintiff will be sustained where the evidence tended to show that as the plaintiff, an intending passenger, was crossing the corridor from the waiting room to the train shed of a large terminal station, she was surrounded and thrown down by a rush of several hundred students who were attending the departure of a football team, that the crowd had been in the corridor for nearly half an hour, had been behaving in a boisterous and disorderly manner, and that after the plaintiff had fallen they formed a ring and danced around her, inflicting further injuries as she lay prostrate.

In such a case it is proper for the court to charge that: "If for a considerable time prior to the accident there was a large crowd of students and followers in the station, indulging in such boisterous conduct as manifestly threatened personal injury to passengers, and the defendant could, by the exercise of due vigilance, have ejected this mob or reduced it to order and control, before the plaintiff was injured, then its failure to do so renders it answerable to the plaintiff if she was subsequently injured by a rush of this crowd."

Argued Nov. 19, 1906. Appeal, No. 56, Oct. T., 1905, by defendant, from judgment of C. P. Chester Co., Jan. T., 1905, No. 46, on verdict for plaintiff in case of Ellen M. Kennedy v. The Pennsylvania Railroad Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BUTLER, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $825. Defendant appealed.

624 KENNEDY *v.* PENNA. R. R. CO., Appellant.

Assignment of Errors—Opinion of the Court. [32 Pa. Superior Ct.

*Errors assigned* among others were (4) in refusing binding instructions for defendant; and (5, 6) portions of charge quoted in the opinion of the Superior Court.

*John J. Pinkerton,* for appellant.—By the testimony of the plaintiff herself it appears that she was the victim of an act of rudeness upon the part of a stranger, and for the consequences of which the defendant cannot be held responsible: Ellinger v. P. W. & B. R. R. Co., 153 Pa. 213; Pittsburg, etc., R. R. Co. v. Pillow, 76 Pa. 510.

The conduct of the students at the station was horseplay, noise, fun and rollicking nonsense, and did not amount to a breach of the peace of which the officers of the law could have taken cognizance, and the railroad company is not liable in damages for their appearance at the Broad street station.

The uncontradicted evidence shows that there was never at any time any violence displayed, nor was there any breach of the peace upon the part of the students in the station.

A common carrier is not bound to protect its passengers from rudeness or bad manners on the part of strangers or other passengers, unless such conduct amounts to a breach of the peace: Ellinger v. P., W. & B. R. R. Co., 153 Pa. 213; Graeff v. P. & R. R. R. Co., 161 Pa. 230.

*Granville L. Rettew,* with him *J. Frank E. Hause,* for appellee.—It is the duty of a carrier of passengers to transport its passengers safely to, and place them safely at the point of destination, and should any injury result to the passengers through the negligence of the carrier, the latter is prima facie responsible: Penna. Railroad Co. v. Aspell, 23 Pa. 147; Pittsburg, etc., Ry. Co. v. Hinds, 53 Pa. 512; Meer v. Penna. R. R. Co., 64 Pa. 225; Ellinger v. P., W. &. B. R. R. Co., 153 Pa. 213.

OPINION BY RICE, P. J., February 25, 1907:

As the assignments of error simply raise the question whether under the evidence the court should have given binding instructions for the defendant, it is not incumbent on us to go farther than to determine whether there was evidence warranting the submission of the case to the jury. Therefore what we

shall say with regard to the evidence must not be understood as implying a finding of the facts but simply as a statement of facts which the jury could find from the evidence.

On the evening of this accident a body of 400 or 500 students and their followers, preceded by a brass band, had come to the Broad street station of the defendant company at Philadelphia for the purpose of witnessing the departure of a football team, and had gathered in the corridor between the train shed and waiting rooms. According to the testimony of some of the witnesses, they arrived at 8:05 P. M. and remained until about 8:50, the leaving time of the train the plaintiff was to take. About 8:30 the gate was opened and announcement made of the train, whereupon she in company with her husband started to cross the corridor to the gate, and was about one-half way across, when she was injured in the manner thus described by her: " This mob rushed right down onto me and they knocked me down. . . . They appeared to be coming two by two, and they knocked me down on to my knees. And I was just in the act of getting up when this one gang all run ring around the rosy, had hold of each other's hands, going as fast as they could. They broke loose and fell right up against me and knocked me on my side in the hip. It all happened in a minute." She was a heavy woman nearly fifty years of age at the time of the accident, and claims to have received serious physical injuries, and, in direct consequence of them, to have sustained a nervous shock with distressing incidents from which she still suffers.

Common carriers do not, in legal contemplation, warrant the absolute safety of passengers in their cars, but they are bound to the exercise of the utmost degree of diligence and care, and it has been held that this duty includes the exertion of such power as conductors and other trainmen have to protect passengers from violence of other persons: Pittsburg, etc., Ry. Co. v. Hinds, 53 Pa. 512; Pittsburg, etc., R. R. Co. v. Pillow, 76 Pa. 510. In a case where these and other analogous cases were considered the rule was stated as follows: " The conductor has general power and control over the train and all persons on it, with authority to compel observance of the regulations of the company, to preserve order, and to employ the whole force of the train men, and of passengers willing to assist, for

these purposes. These extensive powers involve the correlative duty to protect passengers, not only from injury by negligence or accident, but also from violence and illegal annoyance or interference by other parties: " Duggan v. B. & O. R. R. Co., 159 Pa. 248. Chief Justice MITCHELL cites in his opinion: Rommel v. Schambacher, 120 Pa. 579, as a case where upon the same principle an innkeeper was held liable for not protecting a guest from the drunken freak of another. If regard be had to the principle upon which Duggan v. B. & O. R. R. Co. was decided it would be impossible to hold that this duty to protect passengers from violence by disorderly persons, which it is practicable for the servants in charge to prevent, does not begin until the passenger enters the car and ends when he leaves it. The power of the carrier to make and enforce reasonable regulations for the conduct of persons in the rooms provided at stations for passengers is coupled with the correlative duty to exercise care for the protection of passengers, when properly in such rooms, from injury by intruders or by other passengers. Reasonable, rather than the utmost or extraordinary, is generally mentioned as the degree of care required for this purpose. " A carrier must furnish a safe and sufficient means of ingress to, and egress from, its trains. It is likewise incumbent upon it to exercise ordinary care in protecting from danger persons assembled at its stations, intending to depart by its trains. Rudeness and bad manners of strangers and intending passengers, resulting in injuries, will not convict a carrier of negligence. Such conduct is not to be anticipated, and the carrier is not required to provide against it. But when a street-car company invites the public to use its line to visit a park, or other public place of amusement or recreation, and thereby induces large crowds of people to assemble at its stations in such place, the corporation must use reasonable care in handling the people and in protecting them from injuries arising from the conduct of the crowd in entering and leaving its cars : " Muhlhause v. Monongahela St. Ry. Co., 201 Pa. 237. What would be reasonable care at a small way station would not be such at the station where this accident occurred ; and even at a station like the latter it would be unreasonable to require the carrier to maintain a force of men large enough to prevent injury to passengers from every disorderly or riotous conduct that sud-

denly may occur, but which there is no probable cause for expecting. In such a case, the question is not whether a larger force of men ought to have been employed, but whether in the exercise of reasonable care the danger could have been foreseen by the employee in charge, and the injury to the passenger could have been prevented, if such employee and those he had right to call to his assistance had exercised the power they had. This distinction is well illustrated by the case of Pittsburg, etc., Ry. Co. v. Hinds, 53 Pa. 512, where it was shown that a woman passenger was injured during a fight among a mob of disorderly men that had got on the train at a way station. The Supreme Court held: first, that the railroad company was not liable for allowing them to get on, but this was only because the evidence showed clearly that the conductor had no opportunity or force adequate to prevent them, and the company was not bound to anticipate such an occurrence; secondly, that if the conductor did not do all he could to stop the fighting which resulted in the plaintiff's injury, there was negligence which made the company liable, and that this question was for the jury. We quote from the opinion of Chief Justice WOOD-WARD: "If the conductor did not do all he could to stop the fighting, there was negligence. Whilst a conductor is not provided with a force sufficient to resist such a raid as was made upon the train in this instance, he has, nevertheless, large powers at his disposal, and if properly used, they are generally sufficient to preserve order in the cars, and to expel disturbers of the peace. His official character and position are a power." The station master at the Broad street station has not precisely the same powers as a conductor, but he has similar powers to compel observance of reasonable regulations for the protection of passengers in the rooms provided for them at the station, and the evidence shows that there are officers and employees under him whom he can call upon for assistance in such an emergency; hence the above-quoted remarks are pertinent. We refer again to the recent decision of our Supreme Court in Muhlhause v. Monongahela St. Ry. Co., 201 Pa. 237, and also to the discussion of the general question in the opinion of the supreme court of New Jersey, which was adopted by the court of errors and appeals, in Exton v. Central R. R. of N. J., 63 N. J. L. 356 (46 Atl. Repr. 1099), 56 L. R. A. 508. The latter

case is specially pertinent, because one of the points decided was, that the company is liable for injuries to a passenger, at a station, even if the danger arose from the acts and conduct of intruders or strangers, if such acts and conduct were so continued and so notorious that the servants of the defendant company in charge of the depot and the passageways thereof devoted to the use of passengers knew of such acts and conduct, or should have known of them and of the danger arising therefrom and could have prevented them by the exertion of the power they had. This is the precise principle which we think is applicable to this case.

We can discover no such similarity between this case and Ellinger v. Philadelphia, Wilmington & Baltimore R. R. Co., 153 Pa. 213, or Graeff v. Philadelphia & Reading R. R. Co., 161 Pa. 230, as makes either a controlling authority here. In the first of these cases the injury to the plaintiff occurred when she was about to descend from the lower steps of a car to the ground, and was caused by her being jostled off by another passenger rudely pushing by her to enter the car. In the second case the injury to the passenger was caused by another passenger rudely and suddenly pushing a swinging door in the first passenger's face. They decide that a common carrier is not bound to protect its passengers from rudeness or bad manners on the part of strangers or other passengers unless such conduct amounts to a breach of the peace. But under the implied findings of the jury in this case, as we shall presently show by extracts from the charge, the plaintiff was not injured by a sudden act of rudeness, like that described in either of these cases, which those in charge of the station had no cause to anticipate or ability to prevent. We do not say that the facts were undisputed, but there was evidence that this crowd of young men were behaving in a boisterous and disorderly manner, that they were shouting and singing, led by one of their number with a megaphone, that the crowd rushed back and forth from one end of the corridor to the other in a manner similar to that which the plaintiff described, and that this conduct had been continued for a considerable length of time before the injury to her, without apparent effort on the part of those in charge to prevent it. They were not malicious, but good-natured, and evidently were simply expressing in this

manner their enthusiastic regard for their university and its football team. Possibly, also, they were impelled to indulge in this horseplay, as it has been designated, by a desire to encourage the latter; for which impulse, apart from the manner and the place in which it was manifested, no criticism can be made. The singing and shouting harmed no one and perhaps were not preventable; but there is every reason to believe, at least a jury would have been well warranted in finding, that proper and timely remonstrance upon the part of those in charge of the station would have prevented such part of the boisterous and unruly conduct as threatened physical injury to passengers crossing the corridor from the waiting rooms to the train shed. No valid reason can be suggested for holding that the danger and injury to which the plaintiff was subjected were part of the unavoidable risk incident to the execution of lawful purpose in a lawful manner by these young men, which the railroad officials had no right, and were under no obligation, to prevent. They were bound to do what they could.

All of the questions of fact were submitted to the jury in such manner as to bring clearly before their minds the facts to be determined, and the bearing these had upon the general question of the liability of the defendant company; and the legal principles applicable to the evidence are so well set forth in the charge as to render further discussion by us unnecessary. The learned judge explicitly told the jury that the company was answerable only for a failure to exercise vigilance and care toward protecting patrons using the station from apparent and fairly avoidable danger. He said: " If prior to the accident the students and their followers gave no substantial notice of a disposition to indulge in physically violent conduct, dangerous to defendant's patrons, if their charge, supposing they made one, in which the plaintiff was injured, was their first movement of that character, the defendant is not, in the opinion of the court, answerable. Or, if the students had made it plain that they were a menace to passengers, but the defendant was unable to cope with them, and did what it could to protect passengers, then it is not answerable. On the other hand, if for a considerable time prior to the accident there was a large crowd of students and followers in the station, indulging in such boisterous conduct as manifestly

threatened personal injury to passengers, and the defendant could, by the exercise of due vigilance, have ejected this mob or reduced it to order and control, before the plaintiff was injured, then its failure to do· so renders it answerable to the plaintiff if she was subsequently injured by a rush of this crowd." Then after reviewing the evidence and fairly presenting the respective contentions of the parties with reference thereto, he said further : " Then if, by a fair preponderance of the evidence, you find it is proved that, for a considerable time prior to the accident, the crowd had been indulging, with slight intermissions, in such boisterous conduct as plainly threatened injury to passengers, that the defendant could, by the use of the means present and within its control, have ejected such mob or reduced it to order and control, before the plaintiff was injured, that the defendant failed to do this, and, as a direct consequence, the plaintiff was subsequently injured by such mob ; if you find all of these facts to be fairly proved, then the plaintiff is entitled to recover ; otherwise your verdict will be in favor of the defendant." The verdict of the jury implies a finding of all these facts, and as there was evidence upon which such finding could be based by them, the court was clearly right in submitting the question to them, and this was done in a manner of which there can be no just complaint.

All the assignments of error are overruled and the judgment is affirmed.