## Mangini v. SEPTA

392

*Allen L. Feingold*, for plaintiffs.
*Matthew J. Ryan, III*, for defendant.

DiNUBILE, *J.*, December 10, 1974—This is an appeal from the judgments entered on the findings of the court against the Southeastern Pennsylvania Transportation Authority (SEPTA) for damages as follows:

Delores Mangini, a minor, by her parent and natural guardian, Dolores Mangini, in the sum of $1,000;

Dolores Mangini, in her own right, in the sum of $200;

Alice Scarlata, a minor, by her parent and natural guardian, Alice Scarlata, in the sum of $2,500;

Alice Scarlata, in her own right, in the sum of $201;

Deborah Viereck, a minor, by her parent and natural guardian, Mary Viereck, in the sum of $2,000;

Mary Viereck, in her own right, in the sum of $87.00.

The action arises out of an attack by unknown assailants upon plaintiffs while passengers on defendant's trackless trolley. On October 5, 1971, plaintiffs boarded the trolley to return home from

St. Maria Goretti High School, located at Tenth and Moore Streets, Philadelphia, Pa. When the trolley stopped at the corner of Twentieth and Tasker Streets, a group of youths pelted the vehicle with bottles and sticks. Shortly thereafter, five boys entered the front of the trolley and ran down the center aisle without paying a fare. As the youths were assaulting the passengers, one of them stepped on the treadle of the middle door allowing others to enter and join in the attack. Alice Scarlata and Deborah Viereck were both struck on the head with bottles and rendered unconscious. Delores Mangini had her hair pulled and was struck in the face. At no time during the occurrence did the driver seek to intervene or go to the aid of the victims. During this time, the vehicle remained halted at the intersection for several minutes. The driver then pulled away and continued down the street. He did not stop to check the status of the trolley or passengers until a girl informed him that some of the riders were unconscious. Finally, at Twenty-second and Tasker Streets, the motorman halted the vehicle and called SEPTA.

Defendant maintains that there are two central issues in the case: (a) that it cannot be required to provide police protection on board a SEPTA vehicle, and (b) that there can be no actionable negligence on its part to protect passengers against an unpredictable criminal assault.

To require SEPTA to maintain its own police force would raise many problems. Not only would such an order be a financial burden but a determination would also have to be made as to the administration and liability of such a police force. However, it is not necessary to make a final determination on this issue, because clear liability rests on the conduct of the SEPTA driver.

A common carrier is held to the highest degree of care in the transportation of its passengers: Sommers v. Hessler, 227 Pa. Superior Ct. 41 (1974). Even though a common carrier does not warrant the absolute safety of its riders, the carrier is bound to exercise the utmost degree of diligence and care. This duty includes the employment of such power as conductors and other trainmen have to protect its riders from the violence of other persons: Kennedy v. Penna. R.R. Co., 32 Pa. Superior Ct. 623 (1907); LaSota v. Phila. Trans. Co., 421 Pa. 386 (1966). However, to impose liability on the carrier for the offending conduct of another, it must be shown that prior to the occurrence which cause the injury the conduct of the offending party has been such that it indicated a disposition to engage in physically violent conduct and gives rise to a reasonable apprehension of injury to other individuals: Kerns v. Pa. R.R. Co., 366 Pa. 477 (1951); Barlick v. Balto. & Ohio R.R., 41 Pa. Superior Ct. 87 (1909).

The testimony presented during the trial clearly established that this trolley route had been a frequent target for acts of rowdyism and violence. This conduct included bottle throwing, hair pulling and bodily assaults.

On October 5, 1971, as the trolley stopped at Twentieth and Tasker Streets, it was struck with missiles thrown by a group of youths standing nearby. Instead of immediately continuing on the route, the trolley remained stopped. Even though the driver was now alerted to the belligerent demeanor of the youths, creating a reasonable apprehension of injury to the passengers, he opened the front door allowing five of these boys to enter. With this, the youths ran down the aisle without paying a fare and began to assault the passengers.

Our Supreme Court in La Sota, page 390, supra, stated:

"When it becomes evident to the carrier, and its agents, servants and employees, that what appeared to be a decent, well-behaved individual has transformed himself into something else, and the carrier has an opportunity to curb his transgressing onto the safety and comfort of others, the carrier must act to protect the other passengers from his misbehavior."

There were several avenues available to the driver that he could have used to insure the safety of his passengers. He could have pursued the youths down the aisle, moved the bus from the location, honked his horn to alert people on the outside, yelled for help or could have run from the vehicle and telephoned the police. Instead, the driver remained passive in his seat and did not summon aid until he reached Twenty-second and Tasker Streets. Not only was the conduct of the driver negligent when he failed to immediately move the trolley after it was struck with bottles, forewarning him of danger, but also when he took no action once the youths invaded the vehicle. The driver did not do all that a prudent person would do under the circumstances; The Pittsburgh, Fort Wayne and Chicago Railway Company v. Hinds, 53 Pa. 512 (1867).

Defendant further contends that it was error to allow testimony regarding prior disturbances on the route. The testimony was allowed to show that SEPTA had knowledge of the prior altercations and that this past experience should have alerted the driver to guard against a possible attack on his passengers.

For the foregoing reasons, we make a finding for plaintiffs.