Dalton v. Gray Line Motor Tours, Appellant.

290

Argued October 16, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Louis Wagner,* and with him *R. A. Smith* and *Wilbur F. Whittle,* for appellant.—A claim is not compensable where an employee starts a fight about a matter which the referee found had no relation to defendant's business but was a personal controversy: Maquire v. James Lees Son, 273 Pa. 85; McDevitt v. Checker Cab Co., 288 Pa. 394; Meucci v. Gallatin Coal Co.,

279 Pa. 184; O'Rourke v. O'Rourke, 298 Pa. 52; Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454.

*Todd Daniel*, for appellee.—The violence by which claimant was injured was directed against him as an employee and because of his employment, and was compensable under Section 301 of the Workmen's Compensation Act, as occurring in the course of employment: Keyes v. N. Y., O. & W. Ry. Co., 265 Pa. 105; Graeber v. North American Company et al., 29 District Court Reports 979.

OPINION BY GAWTHROP, J., January 25, 1929:

This is a workmen's compensation case. The referee disallowed compensation and dismissed the petition; the board affirmed the referee; the court below reversed the board and directed it to allow the claimant such compensation as he may be entitled to receive under the law; this appeal by the defendant followed.

The referee found the following material facts: The defendant conducts sight-seeing busses in Philadelphia, which begin their trips from a point in front of Keith's Theatre at 1116 Chestnut Street. On July 13, 1926, the claimant was in the employ of the defendant as a solicitor of passengers and ticket salesman for the busses. His place of soliciting business was on Chestnut Street between 12th and 13th Streets, where the busses parked preparatory to their trips. Defendant had another solicitor, Heaton, who was stationed in front of the Adelphia Hotel on Chestnut Street between 12th and 13th Streets. On the above date Heaton had secured two passengers for the nine o'clock bus and went ahead of them toward Keith's Theatre building to delay the starting of the bus, if possible, until his passengers could get aboard, but the bus had left. Meanwhile Heaton's two prospective passengers had proceeded toward the starting point

of the bus and met the claimant, Dalton, in front of a store three buildings west of Keith's Theatre building where he sold them tickets for the next trip. Heaton saw this transaction and after the customers and Dalton had separated, he told Dalton that these persons were his (Heaton's) customers. Dalton told Heaton that he would see that he received his commission on the settlement that evening. Heaton replied that he was not complaining about the commission, which amounted to ten cents, but the "principle." Heaton then started back toward the Adelphia Hotel and when he got about forty feet west on Chestnut Street, he met Redmond, another solicitor for the defendant. Dalton walked along the street to where they were talking. Up to this point the testimony as to the material facts is not in dispute. Dalton testified that he heard Heaton say concerning him, "He knew damn well they were my customers;" that Redmond said he did not know anything about it; that Dalton said to Heaton, "There is no reason for us to argue about it, as you will get the commission tonight;" that Heaton said, "That is not the question;" that Dalton said that when he asked the two customers if they had been solicited, they replied in the negative; that Heaton said, "I don't believe you;" that Dalton suggested that an alley or a side street would be a good place to settle the argument; that Heaton accepted the offer; whereupon, Dalton said, "What is the use," and started to walk away from Heaton, who struck him in the eye. It is conceded that as a result of this blow Dalton lost the sight of his eye. The testimony of Heaton and Redmond for the defendant was to the effect that they were talking on a subject entirely foreign to the ticket episode when Dalton interrupted their conversation and suggested settling the affair in the alley and removed his glasses and touched Heaton on the arm; that, thereupon, the latter removed his glasses and struck Dalton. The referee

found as a fact that there was nothing in the course of the claimant's employment which required him to be where he was when he sustained his injury; that the conversation and encounter between the claimant and Heaton had no relation to the making of a sale of tickets or the furtherance of the defendant's business; that the offensive language and the assault by the claimant were directed against Heaton personally and for reasons personal to the claimant; and that the personal violence by Heaton against the claimant was because of reasons personal to Heaton and to the claimant and was not directed against the claimant as an employe of, or because of his employment by, the defendant. From these findings of fact the referee reached the conclusion of law that the claimant was not entitled to compensation because the injury to him came within the exception of Art. III, Sec. 301 of the Workmen's Compensation Act, which provides that "the term 'injury by accident in the course of his employment' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee or because of his employment."

In his appeal to the board, the plaintiff specified the following errors: "The referee erred in disallowing compensation. The referee erred in concluding that the claimant suffered disability as a result of personal violence directed against him as an individual and not because of his employment with the defendant." The board did not grant a hearing de novo, but examined the testimony taken before the referee. It found as a fact that the point on Chestnut Street where the injury occurred was the premises of the defendant within the intendment of the act, and that if Heaton had committed the assault while Dalton was soliciting business and on account and because of the ticket transaction, the injury received would come

within the provisions of the Compensation Act, but it adopted the other findings of fact by the referee and his conclusion of law that the injury to the claimant fell within the exception to liability provided in Sec. 301 of the act above quoted. The exceptions filed in the court below assigned the following errors by the board: (1) Dismissing the appeal; (2) affirming the findings and conclusions of law of the referee; (3) disallowing compensation; (4) the conclusion that the claimant was not engaged in the furtherance of the employer's business at the time of the accident; (5) the conclusion that the claimant's action was a violation of law; (6) the conclusion of the board in failing to award compensation.

We have reached the conclusion that the reversal of the action of the board was right. The burden rested on the defendant to show that the claim came within the exception to liability as defined by Sec. 301 of the act, and that the injury resulted from an attack arising from personal difficulties: Meucci v. Gallatin Coal Co., 279 Pa. 184, 187. This it failed to meet. While the court cannot reverse findings of facts by the compensation authorities if there is competent evidence to support them, the question whether the findings are supported by any competent evidence, is one of law: McDevitt v. Checker Cab Co., 288 Pa. 394. In the present case the finding that "the personal violence by Heaton against the claimant was because of reasons personal to Heaton and the claimant and was not directed against the claimant as an employee or because of his employment," is not supported by any competent evidence. On the contrary, the only rational conclusion from the evidence is that the claimant's eye was destroyed by the blow of a fellow-employee inflicted during a quarrel about the ticket transaction, a dispute arising in the course of employment about the manner of furthering the employer's business. On this point the following langu-

age of Mr. Justice SADLER in the Meucci case is applicable here: "The trouble had its origin in the service, and was, therefore, compensable, the attack having been upon property used by the company in the carrying on of the particular business." The mere fact that the claimant touched Heaton's arm did not make him such a violator of the law as to deprive him of compensation. It was not so serious an offense as to cause the claimant to lose his status as an employee and become a criminal, bringing upon himself the injury for which he seeks compensation. Conceding, but not deciding, that the touching of Heaton's arm by Dalton amounted to a simple assault and battery, Heaton went beyond his right of self-defense. A simple assault and battery will not excuse a mayhem or other grievous bodily harm: Curran v. Vang Construction Co., 286 Pa. 245, 250. In that case Mr. Justice WALLING remarked that the decision in the Meucci case might well stand on the ground that the foreman, who had been assaulted by the claimant, went beyond the right of self-defense and thereby committed an independent crime not excused by the simple assault and battery upon him. In the McDevitt case, supra, compensation was disallowed on two grounds: first, because the fight occurred over a personal matter; and second, because the injuries to the employee were brought upon himself by such serious criminal conduct as to cause him to lose his status as an employee and become a criminal. In the Curran case, compensation was refused on the latter ground. The present case is distinguished from both of these cases by the fact that there is no evidence to support a finding that the claimant was guilty of such criminal conduct as caused him to lose his status as an employee. It is distinguished from the McDevitt case by the fact that the injury had its origin in the service. It follows that the conclusion of the court below that the claim is compensable was right.

The contention is made in behalf of appellant that, as the claimant did not file in the court below any exception specifying the findings of fact by the board, or the referee sustained by the board, which he alleged to be unsupported by competent evidence, the court below had no authority to disturb any of said findings of fact. The position might be disposed of by stating that the question is not properly before us because it was not raised in the court below. A technical question of pleading, never raised in the court below, never considered by that court, that goes not to the merits of the controversy, and that in any event would have resulted in no more than a formal amendment of the pleadings, will not be considered on appeal: Barry v. Caplin, 73 Pa. Superior Ct. 487. See also Kunkel v. Kunkel, 267 Pa. 163; Lindsay v. Dutton, 227 Pa. 208. We are of opinion, however, that the exception to the affirmance by the board of the findings of fact and conclusions of law of the referee was sufficient to raise the question whether the findings of fact were supported by competent evidence, a question of law.

While the order appealed from is perhaps not a final order we have considered the case on its merits.

The order is affirmed and the record is remitted to the court below with directions to enter judgment for the amount due, to be computed by the court.