WILSON J. HAVER, PLAINTIFF IN ERROR, v. CENTRAL RAILROAD COMPANY, DEFENDANT IN ERROR.

Argued June 23, 1898—Decided November 14, 1898.

The plaintiff, while a passenger in the train of the defendant, was set upon by a baggagemaster in the defendant's employ, and with force and arms and without cause or provocation assaulted by the said employe and injured. In an action against the company to recover damages for the assault—*Held*, that the company was liable for the act of its employe, although it was a wanton and willful trespass. This liability arises from the obligation of the carrier to protect passengers against any injury from the negligence or the willful misconduct of its servants in executing the carrier's contract to carry.

On error to the Hudson County Circuit Court. Tried at the September Term, 1897, before Judge Nevius and a jury.

The declaration in this case is in tort. It avers that the plaintiff boarded one of the trains of the defendant, the Central Railroad Company, a common carrier for the transportation of passengers and baggage between the city of Elizabeth and Bayonne, and that he did thereupon pay the said defendant his fare for passage; that while a passenger as aforesaid, and traveling in the train of the said company, he was then and there insulted and abused by one Simeon D. Apgar, a baggagemaster in the employ of the defendant, and with force

and arms was, without cause or provocation, assaulted by the said employe of said company, whereby the plaintiff was injured ; wherefore he claims damages in the sum of $10,000.

The facts, as they appeared in evidence, were that the plaintiff in December last took passage in the defendant's cars at Elizabethport for Bayonne, Bergen Point; that he took his seat in the passenger compartment of the baggage-car ; that the baggagemaster immediately demanded his fare, which the plaintiff refused to give to him, and so the baggage-master passed along and called the conductor, and the conductor came in; that as soon as the conductor came in he paid him his fare. Then the plaintiff testified : "As I was paying my fare the baggagemaster stood by the door, and the conductor went out of the door, and he passed along and said, ' You son-of-a-bitch, I am notioned to punch the face off you,' and he grabbed hold of me and shook me where I sat in the seat. The other passengers interfered and he broke away from me. He was in the center ; he tackled me again and struck me with all the vengeance he had. I avoided the blow by keeping close to him, and he ran me along the aisle and slammed me against the water-cooler. Finally he let go of me and threw me into the aisle of the car, against the other seats."

On this evidence on the part of the plaintiff the court granted a nonsuit, whereupon the plaintiff sued out this writ of error.

For the plaintiff, *Roberson & Demarest.*

For the defendant, *George Holmes.*

The opinion of the court was delivered by

DEPUE, J. A master is liable for the trespass of his servant committed within the scope of his authority, even though in exercising his authority he use unnecessary violence ; but for a trespass committed by the servant willfully, or of his own malice under color of discharging the duties of

his employment, or where he has gone beyond the line of his duty to commit a trespass, the master will not be liable. This rule of law, where the relation of master and servant exists uncontrolled by other circumstances, is well settled. It was so decided by this court in *Brokaw* v. *New Jersey Railroad and Transportation Co. and Campbell,* 3 *Vroom* 328. The action in that case was in trespass for ejecting the plaintiff with force and arms out of the car of the railroad company " while he was traveling in said car," and the case was before the court on demurrer.    Whether the plaintiff was lawfully a passenger in the company's car, and entitled to the privileges and protection due from the carrier to its passengers, does not appear in the case.

The plaintiff in this case became a passenger in the defendant's car, and at the time of this occurrence had paid his fare to the conductor, and was entitled to all the rights, privileges and protection which the law accords to passengers, and subject to the duties and liabilities which the law imposes on a carrier for the safety of its passengers.

The case now before the court depends not upon the law of liability of a master for the acts of his servants, but upon the duty imposed on the railroad company in the carriage of the plaintiff as a passenger.    The duty of a carrier of passengers is to safely and securely carry persons who bear to it the relation of passengers.    The carrier is under obligation to use the utmost care and diligence in providing suitable and sufficient vehicles for the conveyance of its passengers, to carry the passenger therein to the end of his route, to protect him against assault and other ill-treatment by those employed by and under the carrier's control while on the way, and to exercise the utmost vigilance and care in maintaining order and guarding the passenger against violence, from whatever source arising, which might reasonably be anticipated or naturally expected to occur in view of all the circumstances and the number and character of persons on board.    *Cooley Torts* 644; 5 *Am. & Eng. Encycl. L.* (2d ed.) 541.    In the application of this principle the grade of the employe by

whom the injury was done or the scope of his employment is immaterial. The courts of England seem to apply to such a situation the ordinary rule that prevails as between master and servant. *Allen* v. *L. & S. W. Ry. Co.*, *L. R.*, 6 *Q. B.* 65; *Walker* v. *S. E. R. R. Co.*, *L. R.*, 5 *C. P.* 640; *Railway Co.* v. *Broom*, 6 *Welsb.*, *H. & G.* 314.

In *Isaacs* v. *Third Avenue Railroad Co.*, 47 *N. Y.* 122, the Court of Appeals of New York held that the defendant was not liable for the act of the conductor in pushing a passenger from the car while it was in motion. The decision was put upon the ground that the act of the conductor was a wanton and willful trespass, not in the performance of any duty to or any act authorized by the defendant, and therefore the defendant was not liable. This case was overruled in *Stewart* v. *Brooklyn and Crosstown Railroad Co.*, 90 *Id.* 588. In that case the plaintiff, while a passenger on one of the defendant's street cars, was unjustifiably attacked and beaten by the driver, who also acted as conductor. It was held by the court that the rule relieving the master from liability for a malicious injury inflicted by his servant when not acting in the scope of his employment, did not apply as between a common carrier of passengers and a passenger, and the principle was affirmed that a common carrier undertakes to protect the passenger against any injury arising from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger. Isaacs *v.* Third Avenue Railroad Co. was set aside in the decision of this case, on the ground that that case had been determined by the court upon the assumption that the rule of the master's liability for the assault of a servant committed upon a person to whom the master owed no duty was applicable to that case. Stewart *v.* Brooklyn and Crosstown Railroad Co. was affirmed and followed in *Dwinelle* v. *New York Central and Hudson River Railroad Co.*, 120 *Id.* 117, in which it was held that whatever be the motive that incites the servant to commit an unlawful and improper act towards the passenger during the existence of the relation of carrier and

passenger, the carrier is liable for the act and its natural and legitimate consequences. This liability was deduced from the obligation of the carrier to protect the passenger against any injury from negligence or willful misconduct of its servants while it performed its contract to carry.

In some of the cases, in defining the liability of a carrier of passengers for the willful acts of his servants, the expression "within the scope of employment" or "in the line of duty" is used. Neither of these expressions, in the usual sense, is applicable to this subject except as descriptive of circumstances under which the liability of the carrier is unchallenged. Thus, in *Steamboat Co.* v. *Brockett*, 121 *U. S.* 637, the court held that a common carrier undertakes absolutely to protect his passengers against the misconduct or negligence of his own servant employed in executing the contract of transportation and acting within the general scope of his employment. In that case the action was founded upon an assault committed by a servant upon a passenger in enforcing rules and regulations of the company, and consequently the act was done while the servant was acting within the general scope of his employment. The case did not call for the consideration of the liability of the master under other circumstances, and it will be observed that Mr. Justice Harlan, in delivering the opinion of the court, quotes with apparent approbation the principle adopted in *Stewart* v. *Brooklyn and Crosstown Railroad Co.*, 90 *N. Y.* 588, 591, that a common carrier is bound as far as practicable to protect his passengers, while being conveyed, from violence committed by strangers and copassengers, and undertakes absolutely to protect them against the misconduct of his own servants engaged in executing the contract. The expressions above quoted, used in the cases, mean nothing more than that the carrier is not liable for the acts of the servant when he is off from the duties of his employment, and consequently not employed in executing the carrier's contract of transportation.

In *Pendleton* v. *Kinsley*, 3 *Cliff.* 416, the suit was against the owner of a steamboat on which the plaintiff was a passen-

ger. A dispute arose between the plaintiff and the clerk about the payment of fare. Subsequently the plaintiff was assaulted by the clerk on board the vessel and during the same trip. The defence was that the clerk was not at the time of the assault acting in the course of his employment, and therefore the owner of the vessel was not responsible for his acts. Mr. Justice Clifford, in overruling the defence, said that "the principles of law applicable in litigations growing out of the relations of principal and agent or master and servant are not the principles which fully define the rights, duties, obligations and liabilities of the parties to this controversy." Speaking of the defence the learned judge said: "Adjudged cases may be referred to which support that proposition without qualification, but they do not give full scope and effect to the obligation which the carrier assumes towards his passenger nor to the rights and duties which those relations create and imply. Passengers do not contract merely for shiproom and transportation from one place to another, but they also contract for good treatment and against personal rudeness and every wanton interference with their persons, either by the carrier or his agents employed in the management of the ship or other conveyance, and for the fulfillment of those obligations the carrier is responsible as principal, and the injured party, in case the obligation of good treatment is broken, whether by the principal or his employes, may proceed against the carrier as the party bound to make compensation for the breach of the obligation." The above extract from Pendleton *v.* Kinsley is quoted with approbation in *Bryant* v. *Rich,* 106 *Mass.* 180, 189. The liability of the carrier in such cases rests upon the principle that he has engaged to perform certain duties and has selected his own servants for the performance of that duty, and hence an assault by an employe is a breach of the duty of the carrier to his passenger.

This subject is discussed by Mr. Elliott as follows: "There is much apparent conflict among the authorities upon this subject, but we think some of it is due to the use of the term

'scope of employment' or 'line of duty' in a different sense in different cases, or to a failure to place the decision on the correct ground. It is not merely a question of negligence in such cases, nor is it a question strictly depending upon the scope of the servant's particular employment. It is a question of the absolute duty of a railroad company to its passengers as long as that relation subsists, and a breach of that duty on its part whether caused by the willful act of an employe or not.    *    *    *    Either the company or the passengers must take the risk of infirmities of temper, maliciousness and misconduct of the employes whom the company has placed upon the train and to whom it has committed the discharge of its duty to protect and look after the safety of its passengers. A passenger has no control over them, and the company alone has the power to select and remove them. It is, therefore, but just to make the company, rather than the passengers, take this risk, and to hold it responsible." 4 *Ell. R. R.*, § 1638.

The cases on this subject, in the courts of our sister states, are not harmonious, but the great weight of authority is in favor of the doctrine declared by the New York cases which have been cited. The decisions are collected in an elaborate note to 5 *Am. & Eng. Encycl. L.* (*2d ed.*) 541–548. It is quite unnecessary to reproduce them here. The doctrine that a common carrier of passengers undertakes to carry a passenger safely and securely is nowhere impugned, and to apply to assaults upon a passenger by one of its employes the doctrine that rests solely upon the relation of principal and agent is to overlook the peculiar obligation that rests upon the carrier of passengers and the liability which results from the failure to discharge that obligation.

In actions against common carriers the plaintiff may sue in *assumpsit* on the contract to carry or in case, on the common law duty. 1 *Saund. Pl. & Ev.* 325.

Under the evidence appearing on the record the nonsuit should not have been granted, and the judgment should be reversed.

*For affirmance*—None.

*For reversal* — THE CHANCELLOR, COLLINS, DEPUE, DIXON, GARRISON, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, HENDRICKSON, NIXON, VREDENBURGH. 12.