### ROHRBACK v. PULLMAN'S PALACE CAR CO.

(Circuit Court, E. D. Pennsylvania. January 20, 1909.)

#### No. 236.

1. ASSAULT AND BATTERY (§ 12*)—CIVIL LIABILITY—PROVOCATION.

Where a Pullman car porter committed an assault and battery on a passenger, it was no defense to his civil liability that the assault was provoked by the passenger's insulting language to the porter; such provocation being material only on the question of damages.

[Ed. Note.—For other cases, see Assault and Battery, Cent. Dig. § 10; Dec. Dig. § 12.*]

2. ASSAULT AND BATTERY (§ 66*)—CRIMINAL LIABILITY—DEFENSE.

Insulting words used by a passenger to a parlor car porter constituted no defense to the porter's criminal liability for an assault and battery thereafter committed on the passenger, but were material only in determining the punishment to be imposed.

[Ed. Note.—For other cases, see Assault and Battery, Cent. Dig. § 95, Dec. Dig. § 66.*]

3. CARRIERS (§ 411*) — PARLOR CAR COMPANIES — INJURY TO PASSENGER—ASSAULT BY PORTER—DEFENSES—PROVOCATION.

Plaintiff, after purchasing a seat in defendant's parlor car, ordered a meal from the porter, and later objected that he was not being served in his turn. The porter politely informed him that ladies' orders were served first, whereupon plaintiff started to the platform of the car to complain to the conductor, and in doing so called the porter "a black bastard," whereupon the porter, who had followed plaintiff, assaulted him. *Held*, that plaintiff provoked the assault, and that the parlor car company was therefore not responsible therefor, under the rule that parlor car companies are only bound to provide competent and careful servants, and are liable for assaults or violence of the servants only when not provoked by the wrongful conduct of the passenger.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 411.*

Liability for injuries caused by negligence or torts of servants, see notes to Texas & P. Ry. Co. v. Williams, 10 C. C. A. 466; The Anchoria, 27 C. C. A. 651.]

4. CARRIERS (§ 283*)—INJURY TO PASSENGER—ASSAULT BY CARRIER'S SERVANT.

A carrier is absolutely liable as an insurer for the protection of passengers against assaults and insults at the hands of its servants, unless the passenger alone is the cause of the trouble.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1121–1124; Dec. Dig. § 283.*]

On Motion for a New Trial.

J. Edgar Butler and Chas. F. Warwick, for plaintiff.
Faunce & Andrade, for defendant.

HOLLAND, District Judge. The plaintiff in this case brought suit for a personal injury received on the 18th day of September, 1907,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on a Pullman car of the defendant company. The injury was the result of an assault committed upon him by the porter, under the following circumstances:

The plaintiff, a bookkeeper employed by a race-track bookmaker, came to the station of the Pennsylvania Railroad at Jersey City about 7 o'clock p. m., September 18, 1907, inquired of the conductor of the parlor car for a seat, and was by the latter assigned to No. 3. The plaintiff stepped into the club smoking car, where he met the porter Williams and ordered certain eatables, to be served to him in the parlor car. Shortly after, the plaintiff left the club car and took his seat, No. 3, in the parlor car, and at that time there were other ladies and gentlemen occupying other seats in the same car, when the plaintiff called the porter and inquired why his order had not been served. He was told, according to his own statement, that the ladies in the car were entitled to be served first, to which the plaintiff objected, and, as he claims, walked out to the lower step of the platform of the car to report the action of the porter to the conductor. His testimony on this point is as follows:

"Q. * * * Just tell us what took place, and what you said to him (the porter). A. I said, 'What's the matter with my order?' He says, 'I can't serve you until I have served the ladies in this car.' I looked up at him, I says, 'That's wrong,' because I had been served so many times before in my turn. That is what made me come early. Q. What took place? A. He says, 'I won't serve you until I have served the ladies'; and he put his finger up that way (indicating). I says, 'We will see about that,' and I gets up out of my seat, walks out through the car to the bottom step of the Pullman, the bottom step, and of course I was mad at the time— Q. Never mind that; what did you do? A. I said to the Pullman conductor, 'What does that black bastard mean by insulting me before that crowd of people?' and I did not get the words out of my mouth before he hit me right here (indicating) from behind, followed me up, and, as I fell off the car, he kicked me and kept following me up."

According to the testimony of John Williams, the porter, the plaintiff used the same language, together with other profane and vulgar expressions in the car, and repeated them outside in the presence of the conductor, who corroborated the porter as to what was said outside.

The plaintiff first insisted that he had ordered his supper while in the parlor or chair car, and that there were no other persons in the car at that time, but, upon being confronted with a letter written by him the night of the accident, he admitted he gave his order in the club car, and that he did not know whether there had been any ladies in the parlor car who had given an order ahead of him or not.

At the close of the plaintiff's case, counsel for defendant moved the court for a nonsuit, but this was overruled, and the defendant produced a number of witnesses to show what the defendant regarded as the real facts in the case with reference to the altercation between the porter and the plaintiff. The testimony of John Williams is corroborated by Frank Nilan, the conductor, with reference to the gross and brutal insult to which the porter was subjected. Assuming the story of the plaintiff is a correct version of the facts in the case, that he had given his order in the club car without any knowledge as to

whether there were any orders ahead of him, and that he thereafter went into the parlor car and called the porter, from whom he inquired as to his order, and was informed by the porter that the ladies in the car would be served first, whereupon the plaintiff became angry, and walked out on the lower step of the platform to report the matter to the conductor, it establishes the fact that the porter was only doing his duty in serving the passengers in their turn. Up to this time there is nothing to show that the porter had acted in any improper manner. The porter followed him out, and it was then that the plaintiff, according to his own testimony, called the porter a black bastard, which was overheard by the latter and immediately resented. The porter struck the plaintiff in the face, and, according to the latter's testimony, kicked him after he was down on the platform of the station.

There is no question but that the law will not permit a person, however great the provocation, to take the law in his own hands and inflict punishment by assaulting a person who may insult him. The porter, under the circumstances, could have been indicted for assault and battery, or a suit in damages could have been instituted against him (Wharton's Criminal Law, vol. 1, §§ 316 and 618), and it would have been no answer in law that he had been insulted (Bishop's New Criminal Law, vol. 2, §§ 40 and 41; Wharton's Criminal Law, vol. 1, § 619; 3 Cyc. 1050). The question of provocation may be taken into consideration in the one case in imposing the sentence (3 Cyc. 1051), and, in the latter case, by the jury in awarding damages (3 Cyc. 1077 and 1096), but it would be no defense to either an indictment or a suit for damages that the assault was induced by the insulting remarks of the plaintiff. It, however, does not follow that, because the plaintiff is liable criminally and civilly, the Pullman's Palace Car Company would be liable for his assault upon the plaintiff. It is not a question of whether insulting words of the passenger to the porter is a defense to a civil action for damages, because they are not, but the question is as to the liability of the employer for the employé's assault.

The liability of the defendant to the general public and to the plaintiff is correctly stated in Hutchinson on Carriers, § 1145, and the text of this section is amply supported by the decisions:

"That the sleeping car company is bound to provide competent and careful servants, and will be liable for any assaults or violence of its servants not provoked by any wrongful conduct of the passenger. There is no good reason why the sleeping car company should not be held to the same degree of care for the wrongful and tortious acts of its servants as is exacted of common carriers of passengers, and especially of carriers by rail."

"It is well settled that the master is liable for the willful and malicious acts of the servant, where done in the course of his employment and within its scope." 26 Cyc. 1528.

"The principal in this class of cases is liable for the misconduct of the employé, when it occasions injury to the passenger, whether arising from malice or from neglect. The carrier's obligation, says the Supreme Court of Maine, is to carry his passenger safely and properly, and to treat him respectfully; and, if he intrusts the performance of this duty to his servants, the law holds him responsible for the manner in which they execute the trust. * * * He must not only protect his passenger against the violence and insults of strangers and co-passengers, but, a fortiori, against the violence and insults of his own servants. If this duty to the passenger is not performed

—if this protection is not furnished—but, on the contrary, the passenger is assaulted and insulted through the negligence or the willful misconduct of the carrier's servants, the carrier is necessarily responsible." Thompson's Commentaries on the Law of Negligence, vol. 3, § 3184.

It will be noted that the law, as stated by the above authorities on the subject, holds the carrier responsible for the "assault or violence of its servants not provoked by any wrongful conduct of the passenger" (Hutchinson on Carriers, supra); "for the willful and malicious acts of the servant" (Cyc., supra); "from malice or from neglect, * * * or the willful misconduct of the carrier's servants" (Thompson, etc., supra).

An examination of the facts in the great number of cases cited in the plaintiff's brief and in Thompson's Commentaries on the Law of Negligence, vol. 3, § 3188, illustrating this liability of the carrier for the assault, violence, or insult of the carrier's servant, shows that in all the cases the servant of the carrier was the aggressor, and assaulted or ill treated or insulted the passenger without any reason for so doing in and about and in connection with his employment, and that in nearly all the cases there was not the slightest fault, provoking the misconduct of the servant, on the part of the passenger; but in some of the cases, however, after the carrier's servant had insulted the passenger and aroused his anger and the passenger used insulting words in reply, and an assault by the servant followed, the carrier was held liable, and properly so, because the carrier's servant was the aggressor; but in no case do we find that the carrier has been held liable where the passenger has been the aggressor in an unprovoked abuse of the servant, and grossly and brutally insulted him by applying to him vile and offensive language, which the plaintiff must know would arouse the anger and resentment of any man possessing the least spark of self-respect.

It is true that carriers are required to carry passengers safely—without negligence—and an injury received by reason of the negligence of the carrier will entitle the passenger to recover damages, provided he himself has not by some fault of his own contributed to the injury. So, in this class of cases, the carrier is liable absolutely as an insurer for the protection of the passenger against assaults and insults at the hands of its own servants; but none of the cases include passengers who are alone the cause of the trouble, and there is nothing in justice or reason why the carrier should be liable when the passenger has, by his own misconduct, provoked a respectful and courteous servant to commit the assault by the use of such irritating and insulting language as in all human probability would produce that result.

The whole evidence of the plaintiff shows that the porter was not at fault at all, but was endeavoring to perform his duty by treating the passengers in the car, as well the plaintiff as the others, with equal attention, and simply because the plaintiff was not permitted to have his own way in regard to his order as against what the porter conceived to be the rights of other passengers, of which he politely informed the plaintiff, the latter became angry and used the language stated. He

was to blame entirely for the assault, and he cannot now hold the carrier liable.

The motion for a nonsuit made by the defendant's counsel when the plaintiff closed his case should have been sustained. For that reason, a new trial is awarded.