Cherillo et al. *v.* Steinberg et al., Appellants.

Argued May 3, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Milton E. Harris,* for appellants.

*Abraham Pervin,* for appellee.

OPINION BY KELLER, P. J., July 18, 1935:

On mature consideration of the pleadings and the evidence, we are of opinion that the averments in the plaintiff's statement of claim, supported, as they are, by the evidence in the case, will not permit a recovery in this action, and that judgment non obstante veredicto should have been entered in favor of the defendants.

The action was brought by plaintiff against his former employers to recover the damages sustained by him as a result of a *wilful and malicious assault* upon him by his 'boss', or supervisor,—another of defendant's employees—, because of plaintiff's refusal, during the lunch hour, and *while he was outside the course of his employment,* to proceed with his work and press certain clothes.

The statement of claim averred that plaintiff, a minor, was employed by the defendants, who are cleaners and dyers, to operate one of its machines used for pressing men's suits; that on June 23, 1933 "during the lunch hour, between 12:00 o'clock noon and 1:00 o'clock P. M. *while the said [plaintiff] was outside the scope of his employment* the said Max Steinberg [defendants' employee and plaintiff's boss] in furtherance of the partnership business and as agent, servant and employee of the said defendants ordered the plaintiff ...... to press some suits which the said plaintiff refused to do ...... That upon the said plaintiff's refusal to perform the said work during his lunch hour, the said Max Steinberg as agent, servant and employee of the defendants, and in furtherance of the defendant's business, *wilfully and maliciously struck* the said [plaintiff] several violent blows and strokes upon his head, face, chest and divers parts of his body", etc.

In their answer[1], the defendants did not deny plaintiff's averment that the matters complained of took place 'during the lunch hour' and while plaintiff 'was outside the scope of his employment'; nor that Max Steinberg wilfully and maliciously struck the plaintiff a number of violent blows, etc.; but they did deny the agency or employment of Max Steinberg, who committed the assault, and that he was at the time employed by the defendants as agent, servant or employee or was acting in furtherance of their business.

We think there was evidence, which while not very strong, was sufficient to go to the jury, that Max Steinberg was an employee of the defendants at the time of the occurrence complained of, who supervised or directed plaintiff's work; that he was also a son of one of the partners did not affect defendants' liability. The jury's verdict establishes such employment.

The evidence, viewed in the light most favorable to the plaintiff and in accord with his version of the facts, is that while he was resting during the lunch hour and on his way from the third floor to the second floor to get a drink of water, Max Steinberg met him at the bottom of the stairs with a couple of suits over his arm. His own story follows:

"He said he wanted me to press the suits for him. I said it was not time yet. He said he had to have them. I said he has to wait until my time is up. He said he wouldn't wait, and I said I couldn't do them now. He grabbed me by the arm and pushed me back up the stairs, said he would make me do them. When he got me towards the pressing machine, he said he was going to make me do them. I said I would not do them and he called me a name and I called him a name back and he grabbed me by the arm and hit me in the face with his fist and after he hit me he pushed across towards the stairs and knocked me to the floor and after I was

---

[1] When this action was brought the Rules of the County Court called for the filing of an "answer," not an "affidavit of defense."

on the floor he started to put his knees on my stomach —I don't just remember very much after that, and he sent me down to the office. He told me to go down to the office and on going down to the office he told the bookkeeper to pay me off and the bookkeeper gave me my pay and I went home."

The assault, according to plaintiff's story, was unprovoked by anything except plaintiff's calling the attacker a name, after the latter had first called plaintiff a name. It was not connected with Max Steinberg's duties as supervisor of the pressing machines, nor was it the result of any negligent act on his part. No negligence on the part of the defendants' agent was averred or proved. The attack was just what the plaintiff had averred in his statement that it was, 'wilful and malicious'.

The Supreme Court has held a number of times that where the act of the employee causing injury was so far removed from the duties of his employment as to have in it no element of negligence, but to have been done wilfully and maliciously, the doctrine 'respondeat superior' does not apply and the wrongdoer alone is responsible. Thus in McFarlan v. Penna. R. Co., 199 Pa. 408, 49 A. 270, Mr. Justice MITCHELL, speaking for the court, said: "For a *wilful or intentional trespass* by an employe outside of the line of his duty under his employment it is settled that the employer is not responsible, *even though it be committed while the servant is in the exercise of his employment.* [italics ours] But in the latter case, its wilful and separate character must appear ...... The jury were bound in finding their verdict to consider and determine not only the fact of the assault but also its character and the circumstances under which it was made. The plaintiff testified that he was an intending passenger and was in the act of entering the car. Prima facie, therefore, he was within the authority and control of the conductor in the course of his employment, and there was other testimony to

the same effect. Thus Mrs. Barton, a witness, testified that when the conductor caught hold of the plaintiff he said: 'Stay off until the people get out'. This was evidence that what the conductor did was not only in the course of his employment but in the supposed performance of his duty in the orderly management of the passengers leaving and entering the train. If in so doing he used unnecessary violence the employer would be liable, and the jury have so found." This was approved and followed in Berryman v. Penna. R. Co., 228 Pa. 621, 77 A. 1011, where plaintiff, who was returning home from hunting, got off the train at his destination followed by one Bledsoe, a policeman in the employ of the railroad company. The latter called to him, "Hey there, Berryman", whereupon he stopped, resting the stock of his gun on the station platform, and as he was thus standing Bledsoe began shooting at him from a revolver, while four or five steps away, and seriously wounded him. The court, speaking through Mr. Justice STEWART, said: "That the act of Bledsoe was wilful and malicious on the plaintiff's showing, admits of no question. Was it something separate from the duty he owed his employer? Let the facts answer. Plaintiff had not been guilty of any violation of law; no information had been lodged against him; he was not disturbing the peace; and manifestly the assault could not have been made with a view to accomplishing his arrest. Plaintiff was peaceably departing from the station on his way to his home, disturbing no one, when he was halted. Without any explanation as to why he was addressed, without a single remark, and while he was resting his gun upon the floor with his hand covering the muzzle, Bledsoe standing only four or five feet away, began the murderous assault upon him which only ceased when every load in his revolver had been discharged, and when he had every reason to believe he had killed his victim. Had death followed the assault, Bledsoe's crime, on this evidence, would unquestionably have

been murder in the first degree. Now what is there in the evidence that would support a finding that the assault was committed in discharge of any duty Bledsoe owed to the railroad company? Certainly the defendant company was not requiring the plaintiff's blood at the hands of Bledsoe, its policeman; nor does it appear that the company had any purpose to serve by having his freedom interfered with in the slightest degree. The company had employed Bledsoe to preserve the peace, not to disturb it; and the case shows an entire absence of anything on the part of the plaintiff the doing of which could have concerned the company even in the remotest way ...... But, take the other view of the case, and assume that Bledsoe had intended an arrest on justifiable grounds. So far he would unquestionably have been in the discharge of the duty of his employment. But the fact that in the attempt he committed a wanton and malicious assault admits of no possible dispute. No jury could find otherwise on this evidence. We have said quite enough as to that. In such case, *where the servant in the discharge of a lawful duty wilfully and maliciously inflicts injury, he alone is responsible for the consequences.* [italics ours] The rule respondeat superior applies only where the injury results from the negligent manner in which the duty is discharged. The master cannot be held responsible for the malicious acts of his servants."

Again in Rohrback v. Penna. R. Co., 244 Pa. 132, 90 A. 557, the Supreme Court, speaking through Mr. Justice STEWART, said: "The action was against the railroad company as a common carrier, and the one question in the case is the sufficiency of the evidence to charge the defendant with liability for the assault. It was virtually an action of trespass vi et armis, and before our Procedure Act of May 25, 1887, it must have been so brought. Since negligence was neither alleged nor proved, the one determining question must be, assuming that the porter was the servant of the railroad

company, was the assault committed at the command or with the consent of the employer? If it was committed in the course of the porter's employment, or in the line of his duty, so much might be inferred; but here we have absolutely nothing to show what the duties of the porter were, while it is made manifest from the plaintiff's own narrative of the circumstance that the assault was *a wilful act without other purpose than to inflict injury and punishment for personal insult, and therefore, could not have been in the discharge of any duty* owing the employer. [italics ours] Eliminating from the case the question of whether the defendant directed the assault to be made or assented to it, and the further question of negligence—for as we have said there is absolutely no evidence in support of either— we have here a case where the employer was sought to be held liable for trespass committed by a servant on the latter's own responsibility to accomplish his own purpose and under conditions which the employer could not reasonably have anticipated."

The same principle was applied by President Judge RICE of this court in the case of Greb v. Penna. R. Co., 41 Pa. Superior Ct. 61, in an exhaustive and illuminating opinion. In that case a man named Philip Greb had had some trouble with the conductor over his ticket, which resulted in his being put off the train. His brother, Theodore, stayed on the train until it got to his destination, when he alighted, and while on the station platform was accosted by the baggage master, who had followed him, and after calling him an opprobrious name, knocked him down. Another brother, Frank, came to his rescue and the conductor knocked him down. This court, reversing the lower court, held that the railroad company was not responsible to either Theodore or Frank. The opinion distinguished between McFarlan v. Penna. R. Co., supra, where the railroad company was held liable for an assault upon an intending passenger in the act of entering the car, because he

was within the authority and control of the conductor in the course of the latter's performance of his duty in the orderly management of the passengers leaving and entering the train, and Rudgeair v. Reading Traction Co., 180 Pa. 333, 36 A. 859, where a motorman left his post on the car and assaulted a teamster driving on the track ahead, who refused to turn off, and liability of the traction company was denied, because, although the dispute arose out of the motorman's employment, the attack was not within the scope of his employment; and concluded: "In our opinion it is a case where the court should have held as matter of law that according to the plaintiff's own testimony as to the place of the assault, the circumstances under which it was committed, and the scope of employment of the employee by whom it was committed, the defendant was not liable."

This case is distinguishable in its facts from the cases[2] relied on by the appellee, where the employee was directed by his employer to retake a bailed article or other piece of personal property, and in executing the errand used more force than was necessary; and from cases[3] where it was a part of the employee's duties to put a trespasser off the train, or car, or wagon, and in doing so he was guilty of undue force or threat or some reckless or negligent act, causing injury; and from Pilipovich v. Pittsburgh Coal Co., 314 Pa. 585, 172 A. 136, where the defendant hired and commissioned an industrial policeman for the purpose of protecting its employees from strikers, and while in the

---

[2] McClung v. Dearborne, 134 Pa. 396, 19 A. 698; Marcus v. Gimbel Bros., 231 Pa. 200, 80 A. 75; Reight v. Hamburger, 81 Pa. Superior Ct. 571; McLaughlin v. Singer Sewing Machine Co., 75 Pa. Superior Ct. 533.

[3] Brennan v. Merchant & Co., 205 Pa. 258, 54 A. 891; Hyman v. Tilton, 208 Pa. 641, 57 A. 1124; Pollack v. Penna. R. Co., 210 Pa. 631, 60 A. 311; Petrowski v. P. & R. Ry. Co., 263 Pa. 531, 107 A. 381; Thomas v. Southern Pa. Traction Co., 270 Pa. 146, 112 A. 918; Lafferty v. Armour & Co., 272 Pa. 588, 116 A. 515; Weiermuller v. American Ice Co., 89 Pa. Superior Ct. 278.

course of his employment, the policeman negligently shot plaintiff's husband, who was standing on the porch in front of his store. The distinction was pointed out by our Brother CUNNINGHAM in Cooper v. American Stores Co., 97 Pa. Superior Ct. 474, where a small child was hurt by a grocery clerk, who was sweeping the floor, and pushed her out of the store with his broom, when he said: "The general rule is that the employer is liable for the wrongful acts of his employes if done in the course of their employment, but not for wilful and separate trespasses outside of the line of the employe's duty. We are not persuaded that this is a case in which the court should have held under the evidence for the plaintiffs that, as a matter of law, the employer was not liable. The defense before the jury was a complete denial of any assault. We agree with the views expressed in this excerpt from the opinion overruling the motion for judgment n. o. v.: 'There is nothing in the testimony to indicate that there was anything in the nature of a personal quarrel between the clerk and the customer. Everything indicates that he thought this child was in the way of his sweeping out the store, which he was apparently doing at the behest of his employer and as a duty to be performed for his employer.' "

Nor are the workmen's compensation cases[4], where an employee is hurt in an altercation with a fellow-employee growing out of some dispute arising out of the employment, applicable, for the Workmen's Compensation Act (Act of June 2, 1915, P. L. 736) by implication makes such injury compensable unless it was "caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee or because of his employment" (sec. 301).

Common carrier cases, where the carrier was held

[4] Dalton v. Gray Line Motor Tours, 95 Pa. Superior Ct. 289; Vordy v. Joseph Horne Co., 96 Pa. Superior Ct. 550.

liable for the assault of its employee on a passenger, are also distinguishable because there the liability was based not so much on the doctrine 'respondeat superior', as because of the duty of the common carrier to exercise the utmost degree of diligence and care in the transportation of its passengers, and this duty includes protection against the active participation of its servants in a wanton and unprovoked attack upon a passenger, while he is being transported and while the servant is engaged in executing the contract of carriage. See Artherholt v. Erie Elec. Motor Co., 27 Pa. Superior Ct. 141, 147, and comment on the same in Greb v. Penna. R. Co., supra, pp. 67, 68.

By no stretch of the imagination can it be conceived that it was any part of Max Steinberg's duties to strike or beat the plaintiff for refusing to carry out his instructions, even when working; much less so, when the plaintiff was enjoying his noon recess and was not required to resume his duties or begin work until the rest hour was over. No such action was contemplated in the industrial relation between the two employees. The beating was the result of a *personal quarrel* between them which, while it grew out of the unjustified demand on the plaintiff that he work during the rest hour,— just as in the Rudgeair case, supra, it grew out of the refusal of the teamster to get off the track—was actually precipitated by inflamed passions over the calling of insulting names. The doctrine of 'respondeat superior' does not include injuries so received. For such wilful and malicious trespasses the wrongdoer alone is responsible. See also Vadyar v. L. & N. E. R. R. Co., 318 Pa. 580, 179 A. 435.

With this disposition of the case we need not discuss the other questions raised.

The judgment is reversed and is here entered in favor of the defendants non obstante veredicto.