**O'BRIEN v. PUBLIC SERVICE TAXI CO.**

No. 2796.

United States District Court
M. D. Pennsylvania.

Feb. 28, 1949.

Carlon M. O'Malley and John W. Bour, both of Scranton, Pa., for plaintiff.

William A. Bissell and R. Carl Griffith, both of Scranton, Pa., for defendant.

MURPHY, District Judge.

Defendant moves to set aside the verdict and the judgment entered thereon, for

judgment in accordance with its motion for a directed verdict at the trial, and, in the alternative, for a new trial. The jury found for plaintiff in the sum of $4,500, and answered two interrogatories submitted by the court.[1]

Federal jurisdiction is based on diversity of citizenship; the operative facts occurred in this district; the substantive law of Pennsylvania therefore controls. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

In considering the motion to set aside the verdict we view the testimony in the light most favorable to the plaintiff, including every reasonable inference fairly deducible therefrom. Applying such a test, was there substantial evidence to sustain the verdict? Was defendant responsible as a matter of law?

The jury was warranted in finding that at about 2:00 a. m. while plaintiff was riding as a passenger for hire in one of defendant's taxicabs, sitting on the front seat beside defendant's driver, and proceeding in the direction of his requested destination, he was struck a blow on the top of his head which rendered him unconscious. There was no one else in the cab but plaintiff and the driver. There was nothing in the evidence to indicate that the blow was delivered by a third person or that the injury resulted from any object outside the cab.

At 2:23 a. m. the cab and driver arrived at defendant's office, a few doors from plaintiff's requested destination, and "reported in" to defendant's night dispatcher. No report was made of any accident, or of any damage to or defect in the cab. The driver worked until 7:00 a. m., the end of his shift, and in accounting to defendant for the fares collected included a sum purporting to represent the fare of the plaintiff. About 10:00 a. m. the same morning plaintiff was found lying unconscious, suffering from numerous injuries about the head, in a field in the vicinity of the place from which plaintiff had left when he entered the cab. He was removed to a hospital and did not regain consciousness for four days.

That evening the driver worked driving defendant's cab. At 2:15 a. m. the following morning he was found unconscious and upon removal to a hospital was pronounced dead, the cause of death being two gunshot wounds in the head, the result of either violence or suicide.

Plaintiff did not see the blow struck and, therefore, could not tell precisely who or what struck him. He obviously could not describe the cause of the other head injuries, nor account for his being found in the field.

In Bickley v. Philadelphia & Reading Ry. Co., 257 Pa. 369, 101 A. 654, the plaintiff was struck a blow on the head while entering one of the defendant's railroad cars. The court said 257 Pa. at page 375, 101 A. at page 656, "The plaintiff being a passenger, * * * the circumstances raised a presumption of negligence on the part of the defendant company which it was required to rebut. A common carrier must exercise the highest degree of care, vigilance, and precaution in the transportation of passengers, and a legal presumption of negligence arises, casting upon the carrier the onus of disproving it, when an injury to a passenger is caused by a defect in the road, cars, or any other appliance, or by a want of diligence or care in the carrier or its employés, or by any other thing which the carrier can and ought to control as a part of its duty to carry passengers safely. This is the rule established by our decisions. Meier v. Pennsylvania R. R. Co., 64 Pa. 225, 3 Am.Rep. 581; Niebalski v. Pennsylvania R. R. Co., 249 Pa. 530, 94 A. 1097 [Ann.Cas.1917C, 632]; Fern v. Pennsylvania R. R. Co., 250 Pa. 487, 95 A. 590." And further, 257 Pa. at page 376, 101 A. at page 656, "It is immaterial that the injury was caused by an unidentified object, as the place and circumstances of the accident show that it resulted from the failure to exercise the care required of the carrier to protect the passengers. There is no ground for a suspicion even that the blow received by the plaintiff was from an object cast from outside the car; on the other hand, it is obvious that the object which caused the plaintiff's in-

---

[1] Federal Rules of Civil Procedure, rules 50(b), 50(a) and 49(b), 28 U.S.C.A.

jury fell from the ceiling of the car platform, or that the injury was inflicted by a tool or other object in the hands of the man while engaged at his work. * * * The evidence in the case shows that the injury was due either to a defect in the car or some appliance thereof or to something done or omitted in the conduct and management of the business, and therefore raises a presumption of negligence on the part of the defendant carrier."

This rebuttable presumption of negligence has the same probative force as if established by direct evidence. It stands as a fact except as overcome by testimony produced by defendant. The carrier could relieve itself from responsibility by showing that the injury arose from an accident which the utmost skill, foresight and diligence could not prevent. There are times when the uncontradicted facts may so clearly negative any idea of negligence so as to justify the court in so declaring as a matter of law. That was, however, not the situation here. Defendant offered no evidence whatsoever to account for plaintiff's injuries. Whether or not the presumption of negligence was overcome, and the determination of defendant's responsibility, was for the jury. Meier v. Pennsylvania R. R. Co., 64 Pa. 225 at page 230, 3 Am.Rep. 581; Shaughnessy v. Director General etc., 274 Pa. 413 at page 416, 118 A. 390, 23 A.L.R. 1211; Doud v. Hines etc., 269 Pa. 182, 112 A. 528; Henry, Pennsylvania Trial Evidence, 3d Ed., § 400, p. 604.

See Lake Shore & Michigan Southern Ry. Co. v. Rosenzweig, 113 Pa. 519 at pages 540, 541, 6 A. 545, 550; "If he was knocked down by a blow in his rear, which rendered him unconscious, it does not follow that because he cannot tell what struck him, that the jury may not find the fact that his injury was the direct consequence of a particular act." Accord: Lukon v. Pennsylvania R. Co., 3 Cir., 1942, 131 F.2d 327 at page 329; Commonwealth v. Smith, 135 Pa.Super. 174, 5 A.2d 383; Young v. Yellow Cab Co., 118 Pa.Super. 495, 499, 180 A. 63.

In the light of the foregoing, the jury was warranted in inferring, and in view of the verdict we must assume did infer, that plaintiff's injuries were the result either of some defect in defendant's cab or of an assault upon the plaintiff by defendant's driver. The jury was also warranted in finding that plaintiff was found in the field because defendant's driver did not deliver him safely to his requested destination.

Defendant contends that plaintiff's injuries were so severe that they were the result of a wilful and malicious attack, and that if the driver perpetrated such an assault upon the plaintiff he was, while so acting, not engaged in the line of his duty or the scope of his employment, but was instead on what, by one of the drolleries of the law, is termed a "frolic of his own".

Assuming arguendo that defendant's driver committed a wilful and malicious assault upon the plaintiff, the situation would be one where a taxicab company, a common carrier, entrusted the safe carriage of plaintiff, a passenger for hire, to one of its drivers; and thereafter the driver committed an unprovoked and wilful assault upon the passenger while he was being transported and while the driver was engaged in executing the contract of carriage.

That the carrier would be liable for a passenger's injuries thus sustained is ruled by Artherholt v. Erie Elec. Motor Co., 27 Pa.Super. 141. See comment thereon in Greb v. Pennsylvania R. R. Co., 41 Pa. Super. 61 at page 67, both opinions by President Judge Rice; in Durando v. Philadelphia Rapid Transit Co., 80 Pa.Super. 65 at page 67, and Snow v. Philadelphia Rapid Transit Co., 84 Pa.Super. 236 at page 238, opinions by then Judge, now Mr. Justice Linn of the Supreme Court of Pennsylvania; and in Cherillo v. Steinberg, 118 Pa.Super. 485 at pages 493, 494, 180 A. 115, opinion by President Judge Keller. In addition the Artherholt case was cited with approval and followed in Greenwood v. Union Traction Co., 30 Pa.Super. 488; Adams v. Beaver Valley Traction Co., 41 Pa.Super. 403; Gerlach v. Pittsburg Rys. Co., 94 Pa.Super. 121 at page 133.

In determining whether or not the defendant is liable for its servant's conduct, it is necessary to consider the doctrine as announced in the carrier-passenger relationship cases as distinguished from the or-

dinary negligence case. In the former, in Pennsylvania, as to certain phases of the relationship, the standard of care is that set forth in Bickley v. Philadelphia & Reading Ry. Co., supra, i. e., "the highest degree of care, vigilance, and precaution"; in the latter the standard is ordinary care. In the former the duty of care arises from an implied contract between the carrier and passenger, and from certain standards that have been established by the Pennsylvania decisions;[2] in the latter the applicable doctrine is respondeat superior. The distinction is a carry-over of a traditional viewpoint in the law which required a higher duty in certain relationships, e. g., in the cases of the innkeeper-guest, bailment for hire, and in the carrier-passenger situations, then in the ordinary case of master and servant or principal and agent.[3]

In Pennsylvania, as we indicated, the standard of care set forth in Bickley v. Philadelphia & Reading Ry. Co., supra, does not apply to all phases of the passenger-carrier relationship.

As to the area of coverage:

In Artherholt v. Erie Elec. Motor Co., supra, the passenger was actually being transported; in Bickley v. Philadelphia & Reading Ry. Co., supra, and in McFarlan v. Pennsylvania R. R. Co., 199 Pa. 408, 49 A. 270, the passenger was on the platform entering the car; in Riddell v. Philadelphia Rapid Transit Co., 80 Pa.Super. 176, the intending passenger was in a waiting line; in Schimpf v. Harris, 185 Pa. 46, 39 A. 820, the passenger was on the car platform about to alight; in Kelley v. Lehigh Valley R. R. Co., 236 Pa. 110, 84 A. 754, the passenger had just reached the station platform upon leaving the train. In Greb v. Pennsylvania R. R. Co., supra, Judge Rice stated this standard applied while the passenger was being transported and when he was either entering or alighting from the carrier's vehicle, but not thereafter, except in certain special cases, e. g., a passenger when purchasing his ticket being assaulted by the ticket agent or when checking or applying for his baggage being assaulted by the servant of the carrier connected with that part of his business, or when passing along the station platform on his way to or from the train being assaulted by the servants the carrier has employed to oversee the platform and enforce their regulations regarding its use, and said Judge Rice "similar ones * * * might be cited". In Berryman v. Pennsylvania R. R. Co., 228 Pa. 621, 77 A. 1011, 30 L.R.A.,N.S., 1049, the court suggests the case of a rail-

[2] The Pennsylvania cases as to the carrier-passenger relationship and the theory of implied contract are discussed throughout the text of the opinion. Cf. Horney v. Nixon, 213 Pa. 20, 24, 61 A. 1088, 1 L.R.A.,N.S., 1184, 110 Am.St. Rep. 520, 5 Ann.Cas. 349, and cf. 4 Williston on Contracts, Revised Edition, § 1113.

[3] On the subject generally see Holmes' "The Common Law", p. 16, "The true reason for this exceptional responsibility was the exceptional confidence which was necessarily reposed in carriers and innkeepers"; see Id. p. 164 et seq as to bailments; 4 Williston on Contracts, Revised Ed., § 1113 carrier-passengers, §§ 1066, 1070 innkeeper-guest, § 1065A bailment; 10 Am.Jur. Tit. Carriers, § 1447; 13 C.J.S., Carriers, §§ 689, 691; 3 Michie on Carriers (1915) §§ 2569–2601, pp. 2038–2040; Vol. 1 Restatement, Law of Agency, § 214 and comments a and d; Burdick on Torts, 4th Ed., §§ 127, 144, 151; Shearman & Redfield on Negligence, Revised Ed., §§ 150, 152, 158; 5 Elliott on Railroads, 3rd Ed., § 2489; Haver v. Central R. Co., 62 N.J.L. 282, 41 A. 916, 43 L.R.A. 84, 72 Am.St.Rep. 647; Birmingham Ry. & Electric Co. v. Baird, 130 Ala. 334, 30 So. 456, 459, 54 L.R.A. 752, 89 Am.St.Rep. 43; Goddart v. Grand Trunk Railway Co., 57 Me. 202, 2 Am.Rep. 39; Dwinelle v. New York Central & H. Railroad Co., 120 N.Y. 117, 24 N.E. 319, 8 L.R.A. 224, 17 Am.St.Rep. 611; Stewart v. Brooklyn & C. Railroad Co., 90 N.Y. 588, 43 Am. Rep. 185; Hayne v. Union St. Ry. Co., 189 Mass. 551, 76 N.E. 219, 3 L.R.A.,N. S., 605, 109 Am.St.Rep. 655; and see Note 40 L.R.A.,N.S., 999, 1912, and particularly at 1039 et seq where the Pennsylvania cases are analyzed. As to the federal cases see Chamberlain v. Chandler, 1823, Fed.Cas.No.2,575, 3 Mason 242; New Jersey S. B. Co. v. Brockett, 1887, 121 U.S. 637, 645, 7 S.Ct. 1039, 30 L.Ed. 1049; New Orleans & N. B. Ry. Co. v. Jopes, 1891, 142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919; Pullman's Palace Car Co. v. Campbell, 1894, 154 U.S. 513, 14 S.Ct. 1151, 38 L.Ed. 1069, affirming Campbell v. Pullman Palace-Car Co., C.C., 1890, 42 F. 484; Rohrback v. Pullman's Palace Car Co., C.C.E.D.Pa., 1909, 166 F. 797.

road officer engaged in making arrests as to passengers; in accord see Duggan v. Baltimore & O. R. R., 159 Pa. 248, 28 A. 182, 186, 39 Am.St.Rep. 672.

In Kennedy v. Pennsylvania R. R. Co., 32 Pa.Super. 623, at page 626, it was held that the standard did not apply to passengers in the railroad station; in Greb v. Pennsylvania R. R. Co., supra, and Berryman v. Pennsylvania R. R. Co., supra, that it did not apply to a passenger who had left the train and was walking across the station platform.

In the bus and taxicab cases the standard has been applied as to actual transportation, entering or alighting, and as to the kind of place, i. e., dangerous or otherwise, where the passenger is discharged. See Hughes v. Pittsburgh Transportation Co., 300 Pa. 55, 150 A. 153; O'Malley v. Laurel Line Bus Co., 311 Pa. 251, 254, 255, 166 A. 868; and see Lyons v. Pittsburgh Rys. Co., 301 Pa. 499 at page 501, 152 A. 687, as to the duty generally.

Servants covered by this standard:

In Pittsburg Ft. W. & C. Rys. Co. v. Hinds, 53 Pa. 512, 91 Am.Dec. 224; Pittsburg & C. Ry. Co. v. Pillow, 76 Pa. 510, 18 Am.Rep. 424; Duggan v. Baltimore & O. R. R. Co., supra, the court refers to conductors and other trainmen; in Bickley v. Philadelphia & Reading Ry. Co., supra, to "the carrier or its employees"; in Artherholt v. Erie Elec. Motor Co., supra, and in Greb v. Pennsylvania R. R. Co., supra, to the "servant in charge * * * while he is engaged in executing the contract of carriage"; in Kelley v. Lehigh Valley R. R. Co., supra, to a brakeman; in Schimpf v. Harris, supra, to a brakeman acting in an emergency; in Snow v. Philadelphia Rapid Transit Co., supra, the act was by the motorman with the knowledge of the conductor; in Riddell v. Philadelphia Rapid Transit R. Co., supra, the servant was the "starter"; and see the various servants suggested in the special cases discussed in Greb v. Pennsylvania R. R. Co., supra; Berryman v. Pennsylvania R. R. Co., supra, suggests a policeman making an arrest as to passengers.

Variance in the measure of protection in the exercise of this standard:

We are here concerned only with that phase of the duty of care as it applies to the conduct of the carrier's servants. Pittsburg Ft. W. & C. Ry. Co., v. Hinds; Pittsburg & C. Ry. Co. v. Pillow, and Duggan v. Baltimore & O. R. R., all supra, held that it was the duty of conductors and the trainmen under them to protect passengers being transported from violence and illegal annoyance or interference by other parties. In Artherholt v. Erie Elec. Motor Co. and in Greb v. Pennsylvania R. R. Co., both supra, the court reasoned that since this duty existed to prevent injury to passengers from the violence of other persons, a fortiori, the duty included protection from the unprovoked assaults of such servants themselves upon passengers being transported or while entering or alighting from the carrier's vehicle while the servants were engaged in executing the contract of carriage. However, as to the acts of third persons, the carrier has a duty to protect the passengers only from such acts as it is practicable for the servant in charge to prevent. See e. g., Wood v. Philadelphia Rapid Transit Co., 260 Pa. 481 at pages 486, 487, 104 A. 69, 71, L.R.A.1918F, 817, "A carrier is required only to interfere with the voluntary acts of passengers when they constitute a breach of the peace or are such as to suggest a reasonable probability that injury will thereby result to others. * * * It is well settled that a carrier is not liable for injuries sustained by one passenger from the rudeness, crowding, or jostling of another (Eillinger v. Philadelphia W. & B. R. R., 153 Pa. 213, 25 A. 1132, 34 Am.St.Rep. 697; Graeff v. Philadelphia & R. Ry. Co., 161 Pa. 230, 28 A. 1107, 23 L.R.A. 606, 41 Am.St.Rep. 885), nor for injury from the negligent or willful act of another, unless given an opportunity to prevent it. See Widener v. Philadelphia Rapid Transit Co., 224 Pa. 171, 73 A. 209; Kantner v. Philadelphia & R. Ry. Co., 236 Pa. 283, 84 A. 774; Hillebrecht v. Pittsburgh Rys. Co., 55 Pa.Super. 204; 10 Corpus Juris. 901. To hold otherwise would render a common carrier an insurer

of the safety of its passengers, which it is not."

As to preventing assaults of its servants, however, Judge Rice states in Greb v. Pennsylvania R. R. Co., supra, 41 Pa.Super. at page 68, that there is great force in the reasoning which requires that as to those the carrier give "absolute protection"—the duty being not to commit an unprovoked assault upon the passenger while he is being transported or entering or alighting from the carrier's vehicle.

It has been held that the motive which impels the servant to refrain from protecting the passenger from the assaults of third persons is immaterial. Artherholt v. Erie Elec. Motor Co., supra; Lang v. Pennsylvania R. R. Co., 154 Pa. 342, 26 A. 370, 20 L.R.A. 360, 35 Am.St.Rep. 846; see Adams v. Derian, 115 Pa.Super. 357 at page 363, 175 A. 762; 10 Am.Jur., supra, § 1121, N. 8, citing Atchison T. & S. F. R. Co. v. Henry, 55 Kan. 715, 41 P. 952, 29 L.R.A. 465. A fortiori, the motive of the servant himself in committing the assault is immaterial.

§ 214, Restatement of the Law of Agency, comment d, reads inter alia, "* * * the fact that the one to whom the performance of the duty is delegated acts for his own purposes and with no intent to benefit the principal or master is immaterial." The Restatement cites the following as an illustration: "P, a railroad, employs A, a qualified conductor, to take charge of the train. A assaults T, a passenger. P is subject to liability to T." And see 10 Am.Jur., supra, § 1447; Michie Op.Cit. supra, § 2569; Elliott Op.Cit. supra, § 2489; 13 C.J.S., Carriers, § 691, supra.

It does not matter that the assault was neither instigated or authorized by the carrier, but was in violation of the standing rules of the company requiring drivers to treat passengers civilly. Artherholt v. Erie Elec. Motor Co., supra; Dunne v. Pennsylvania R. R. Co., 249 Pa. 76, 94 A. 479.

The duty of the carrier to protect the passenger where the special duty of care exists is non-delegable. See Restatement of the Law of Agency, § 214: "A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other agent is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty." Comment a thereto reads inter alia as follows: "Unless one has directed a specific tortious act or result or has been negligent, he is normally not responsible for the conduct of others, except that of his agents or servants acting within the scope of their employment. By contract, however, or by entering into certain relations with others, a person may become responsible for harm caused to them by conduct of his agents or servants not within the scope of employment; the extent of this liability depends upon the duty assumed * * *. There are three forms of the duty of protection. * * *

\* \* \* \* \* \*

Thirdly, one may have a duty to see that due care is used in the protection of another, a duty which is not satisfied by using care to delegate its performance to another but is satisfied if, and only if, the person to whom the work of protection is delegated is careful in giving the protection. In this third class, the duty of care is non-delegable * * *." Such duty must be performed or the carrier is liable to the passenger for the injuries sustained.

The "scope of employment" and "line of duty":

See Note 40, L.R.A.,N.S., 999 at page 1039 et seq., discussing the Pennsylvania cases as to this phase.

In Greb v. Pennsylvania R. R. Co., supra, 41 Pa.Super. at page 68, speaking of the duty of absolute protection, "It is unnecessary to consider whether, as respects a passenger while being transported and when entering or alighting from the carrier's vehicle, it is invariably applicable regardless of the nature and scope of the servant's duties and authority."

See the following from Berryman v. Pennsylvania R. R. Co., supra, 228 Pa. at page 626, 77 A. at page 1013, 30 L.R.A., N.S., 1049. The court in speaking of cases where the special duty toward the

injured party arising out of a contract relation was violated states, "In every such case the employé is directly in the line of his duty, in the sense that he is presently engaged in doing the work for which he was employed. It is the duty of the conductor to make his collections, and it is his duty to maintain order in the car for the protection of passengers * * *. It is for such purposes these employés are engaged." In fact, in all of the Pennsylvania cases allowing recovery the court shows that the servant was doing the work he was employed to do when the assault or misconduct occurred.

It cannot be said precisely whether under such circumstances in Pennsylvania the "scope of employment" and the "line of duty" of the employee in charge is immaterial; or whether the scope of employment and line of duty are broadened not only to cover the regular work of such servant's employment for the carrier but also the duty to act affirmatively in preventing injury to the passengers by others, and the duty of such servant in charge of the carriage to refrain from causing such injury himself. The end result is the same. See Artherholt v. Erie Elec. Motor Co., supra; Greb v. Pennsylvania R. R. Co., supra; Berryman v. Pennsylvania R. R. Co., supra; Cherillo v. Steinberg, 118 Pa.Super. 485, 180 A. 115.

In this connection see 4 Williston on Contracts, supra, § 1113, p. 3172, "The decisions are often rested on the ground that the action of the servant or agent was within the scope of his employment, and in many cases this may be true; but when the act in question had no relation to the carrier's business and, though occurring in the carrier's vehicle or station, was due wholly to private interests or motives of the servant, the carrier's liability must be rested on the broader ground previously discussed in connection with innkeepers."

By comparison with the text writers, Corpus Juris Secundum, American Jurisprudence, and the weight of authority, we think it is fair to say that Pennsylvania applies the terms "scope of employment" and "line of duty" rather strictly and certainly not broadly. See authorities cited supra in footnote 3.

The rule announced in Artherholt v. Erie Elec. Motor Co., supra, is equally applicable to a taxicab company, a common carrier of passengers. Hughes v. Pittsburg Transportation Co., 300 Pa. 55, 150 A. 153; O'Connell v. Quaker City Cab Co.. 84 Pa.Super. 323; Bickel v. Reed, 118 Pa. Super. 335, 179 A. 762; McBride v. McNally, 243 Pa. 206, 89 A. 1131, 52 L.R.A., N.S., 259.[4]

While the Supreme Court has never cited Artherholt v. Erie Elec. Motor Co., supra, eo nomine, (except in Palmer v. Philadelphia B. & W. R. R. Co., 218 Pa. 114, 118, 66 A. 1127, on another question,) that case in our judgment states the law of Pennsylvania. We say this notwithstanding the finding of non-liability in Greb v. Pennsylvania R. R. Co., supra; Berryman v. Pennsylvania R. R. Co., supra; Scanlon v. Suter, 1893, 158 Pa. 275, 27 A. 963; Rohrback v. Pennsylvania R. R. Co., 1914, 244 Pa. 132, 90 A. 557, and in Win v. Atlantic City R. Co., 248 Pa. 134, 93 A. 876.

In Greb v. Pennsylvania R. R. Co., supra, and Berryman v. Pennsylvania R. R. Co., supra, the court considered the place of the assault one where ordinary care was the standard; in the Greb case the baggageman acting as brakeman and the conductor left the train to go upon the platform to commit the assault, an area where they had no duty to perform for the carrier; whereas in the Berryman case the officer committing the assault was not performing any duty whatsoever for the carrier at the place of the assault.

Scanlon v. Suter, supra, was a per curiam opinion, decided on procedural grounds. It is so cited in most cases which thereafter referred to it. In a few instances it has been cited with cases involving the question of liability under the doctrine of respondeat superior, e. g., in Greb v. Penn-

---

4 See Note, Duty and Liability of Carrier of Passengers for hire by automobile. 4 A.L.R. 1499 at 1501; 31 A.L.R. 1202 at 1206; 45 A.L.R. 297 at 300; 69 A.L.R. 980 at 992; 96 A.L.R. 727 at 753.

sylvania R. R. Co., supra. Win v. Atlantic City R. Co., supra, involved an assault by a brakeman; it is not clear what the circumstances were. Cf. Kelley v. Lehigh Valley R. R. Co., supra, where liability was sustained when a brakeman struck a departing passenger with a ventilator stick.

Rohrback v. Pennsylvania R. R. Co., supra, held as a matter of law the carrier was not liable for a wilful assault committed by a pullman porter upon a passenger for personal insult, as there was no evidence to show what the duties of the porter were; and moreover, the court held the evidence was insufficient to charge defendant with liability for the assault. When the assault occurred the passenger was standing on the lower step of the car while the train was stopped at the station platform. See opinion of the lower court in 1913, 22 Pa.Dist.R. 439; Rogers v. Philadelphia & Reading Ry. Co., 263 Pa. 429, 166 A. 734, held the railroad company answerable for the negligence of a pullman porter resulting in injury to the passenger. In Rohrback v. Pullman's Palace Car. Co., C.C.E.D.Pa., 1909, 166 F. 797, recovery was denied for the same injury as that in Rohrback v. Pennsylvania R. R. Co., supra, on the ground that the passenger was the aggressor in an unprovoked abuse of the servant and himself caused the assault. Cf. New Orleans & N. E. Ry. Co. v. Jopes, 1891, 142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919, and see Pennsylvania Railroad Co. v. Aspell, 23 Pa. 147, 62 Am.Dec. 323 (a carrier is not liable for perils to which a passenger exposes himself by his own rashness or folly). Riddell v. Philadelphia Rapid Transit Co., supra, discussing Rohrback v. Pennsylvania R. R. Co., supra, 244 Pa. at page 132, 90 A. at page 557, appears to overlook the duty to protect the passenger as well as to refrain from assaulting him. We understand Rohrback v. Pennsylvania R. R. Co., supra, to hold that, since the special duty to protect was not present, respondeat superior was the measure of liability and therefore the defendant was not liable for an assault by the servant who had no other purpose than to punish for personal insult. See 10 Am. Jur., supra, § 1123. And cf. Pennsylvania R. R. Co. v. Vandiver, 1862, 42 Pa. 365, 82 Am.Dec. 520; Lake Shore etc. Ry. Co. v. Rosenzweig, supra; Young v. Pennsylvania R. Co., 1886, 115 Pa. 112, 7 A. 741. And see Thompson-Starrett Co. v. Heinold, 3 Cir., 1932, 60 F.2d 360; Vannatta v. Tolliver, 82 Pa.Super. 546, at page 548; Jackson v. Fort Pitt Hotel Inc., 162 Pa. Super. 271 at page 273, 57 A.2d 696.

The plaintiff passenger was within the area in which the special duty of care was required; the circumstances surrounding the injury were such as to give rise to the presumption of negligence which the carrier was obliged to rebut; the motive of the servant for an unprovoked assault was immaterial; whatever view is taken of the scope of employment or line of duty the driver was performing the very task for which he was employed, i. e., driving the cab (a driver of a taxicab has the same duty and responsibility as to the vehicle and a passenger therein as a railroad conductor. Cf. Mittleman v. Philadelphia Rapid Transit Co., 221 Pa. 485, 70 A. 828, 18 L.R.A.,N.S., 503; Ainsley v. Pittsburg, C., C. & St. L. Ry. Co., 243 Pa. 437, 90 A. 129) and executing the contract of carriage; there was substantial evidence to support the verdict; the case was properly submitted to the jury.

The defendant's motion to set aside the verdict is denied.

Defendant's motion for a new trial suggests no additional grounds and is also denied.